Paul Douglas **DECKER**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 48A02–8611–CR–420.

Court of Appeals of Indiana, Second District.

Nov. 30, 1987.

Craig B. Campbell, David W. Stone, IV, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Paul Douglas Decker appeals his convictions for burglary, a class C felony,[1] and

---

1. IC 35–43–2–1 (Burns 1985) defines this crime as follows:

   "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony."

resisting law enforcement, a class A misdemeanor.[2] We reverse.

## FACTS

On January 1, 1984, at approximately 8:30 p.m., Mary Dudley was walking through a yard at 2415 Central Street, Anderson, Indiana, on her way home. She noticed a man standing in the yard and another man on the porch of the house. He held the storm door open and appeared to be trying to get into the house. Knowing the house was unoccupied because its owner, Mrs. Morehead, was in a nursing home, Dudley went home and called the police.

Officer Cummings responded to the call and spotted two men running across a yard on a nearby block. He and other officers gave chase and ultimately apprehended Paul Decker and his brother, Jerry Decker. Dudley identified Paul as the man she had seen in Morehead's yard.

Paul was charged with burglary and resisting law enforcement. He was tried by jury on August 29, 1986. Testimony at trial revealed that a hasp and padlock used to secure the door of the separate garage structure at 2415 Central Street was broken. A large wrench that had been stored in the garage was found alongside the exterior wall of the garage.

2. IC 35-44-3-3(3) (Burns 1985) defines this crime as follows:
 "A person who knowingly or intentionally:
 . . .
 (3) Flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement, a class A misdemeanor."

3. On appeal, Paul raises three other issues: whether the evidence is insufficient to support his conviction, whether the trial court erred in not permitting him to introduce evidence Mary Dudley, the State's witness, had previously been convicted of eight counts of check deception, and whether the trial court erred in giving the jury final instruction number 17. However, because we otherwise reverse we do not consider these issues other than to examine the evidence to determine if it is sufficient to sustain his conviction except for the reversible error. It is; therefore, Paul is not entitled to an appellate

The jury found Paul guilty on both counts.

## ISSUE

■ Whether the trial court's questioning of Jerry denied Paul a fair trial.[3]

## DISCUSSION

Paul argues the trial judge's interrogation of Jerry denied him a fair trial by destroying his credibility before the jury. The State responded that Paul has waived the issue on appeal because he failed to make a specific objection at trial. Alternatively, the State denies the judge's questions impaired Jerry's credibility.

■ Generally, a specific objection is required to preserve an issue for appeal. Bedgood v. State (1985), Ind., 477 N.E.2d 869, 872. Nevertheless, in Kennedy v. State (1972), 258 Ind. 211, 280 N.E.2d 611, our supreme court refused to apply the waiver doctrine to unobjected incidents of improper judicial intervention because "[a] fair trial by an impartial judge and jury is an essential element in due process." Kennedy, 258 Ind. at 218, 280 N.E.2d at 615. Quoting from Wilson v. State (1943), 222 Ind. 63, 78, 51 N.E.2d 848, 854, a case where alleged error was not preserved in the motion for a new trial, the Kennedy court continued:

acquittal. In addition, for the benefit of all concerned on retrial, we direct the parties' attention to McDaniel v. State (1978), 268 Ind. 380, 375 N.E.2d 228; and Winegar v. State (1983), Ind.App., 455 N.E.2d 398, which hold proof of a conviction of check deception can be used to impeach a witness. Finally, final instruction number 17 advised the jury of two things: the procedure by which the State may seek sentencing of an accused as an habitual offender and that a pending post-conviction relief petition does not affect the validity of a conviction. The habitual offender topic arose in the course of Jerry's testimony concerning his guilty plea to charges arising from the subject incident. Again, for the benefit of the parties on retrial, we observe there appears to be little, if any, relevance to the habitual offender procedure; at most, at trial, the question was what was Jerry's understanding of the significance of an habitual offender charge which is a matter of evidence rather than a matter of law for the jury.

" 'The easy course would have been to examine the motion for new trial and, having found that the errors relied upon are not mentioned therein, to have affirmed the judgment.... But in a case involving an appellant's life or liberty we may not ignore prejudicial errors affecting his constitutional rights.... The procedural rules that would prevent their consideration must give way to the fundamental principles of due process.' "

*Kennedy,* 258 Ind. at 218, 280 N.E.2d at 615.

■ Thus, *Kennedy* recognized the applicability of the fundamental error doctrine of review to claims of improper judicial intervention in a criminal trial.[4] This is not to say any claim of judicial intervention is subject to review as fundamental error. As our supreme court has repeated on numerous occasions:

" 'Fundamental error is error that, if not rectified, would deny a defendant fundamental due process. *Johnson v. State,* (1979) [271] Ind. [145], 390 N.E.2d 1005. It is not enough, in order to invoke this doctrine, to urge that a constitutional right is implicated. Only when the record reveals clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied, will this Court review an issue not properly raised and preserved. *Nelson v. State,* (1980) [274] Ind. [218], 409 N.E.2d 637.' "

*Williams v. State* (1984), Ind., 464 N.E.2d 893, 894.

A separate justification exists for our review under the fundamental error doctrine. On two occasions during the trial judge's interrogation of Jerry, which forms the basis for Paul's asserted error, Paul's attorney sought to object. On each occasion he was told by the trial judge to be quiet. The rationale behind the specific objection rule is to forestall parties not objecting pending the outcome of the litigation. This rationale is not advanced when the trial judge impedes objections rather than counsel voluntarily refraining from interjecting objections.

Accordingly, we examine the record to determine whether the conduct of the trial judge amounted to fundamental error. It did.

■ Paul did not testify at his trial. However, his brother, Jerry, testified as a State's witness. On direct examination Jerry admitted that he had previously pled guilty to charges of burglary and resisting law enforcement in connection with the same incident. He also admitted he had made a post-arrest statement to the police in which he said Paul was with him when he committed the offenses. However, on cross-examination, Jerry denied both his and Paul's commission of the charged offenses. He testified he pled guilty to avoid habitual offender charges which would result in his spending the rest of his life in prison and had since filed a petition for post-conviction relief. Jerry further recited his version of the events.

Jerry testified he and Paul had been smoking marijuana near the garage and stepped inside through an open door when Paul heard somebody approaching. After seeing a lady pass the garage, they left and began walking down the alley toward a friend's house. Upon seeing a police car, they decided not to enter the friend's house and instead headed for Jerry's. They were apprehended before they arrived. They took nothing from the garage and did not run from the police.

During his re-direct examination, Jerry was examined concerning the circumstances surrounding his guilty pleas, his statement to the police, and his version of the incident. At one point in his re-cross examination, Jerry testified to a conversation he had with a probation officer prior to his sentencing hearing. He asserted he told the probation officer the truth about the incident (*i.e.,* denied the charges of burglary and resisting). At this point, the following colloquy occurred between Jerry and the judge in the presence of the jury:

"Judge: Why would you lie to me and tell the truth to my probation officer? Mr. Smith [defense attorney]:

4. *Contra Lahrman v. State* (1984), Ind.App., 465 N.E.2d 1162, 1169.

Judge.

Judge: You be quite [sic] a minute. Why would you lie to me and tell the truth to my probation officer?

A. Cause I didn't want to serve the rest of my life in prison."

Record at 627. Jerry also testified his petition for post-conviction relief alleged his guilty plea, previously entered before the same judge as in the instant case, was not knowingly, intelligently, and voluntarily made. After this testimony, and after further examination by the State and the defense, the trial judge initiated the following dialogue, again in the presence of the jury:

"JUDGE: This uh, this post conviction petition, that's under oath too, isn't it? Do you swear that, do you, Mr. Decker?

A. Yes, you uh have verification on it, the last page, I believe.

JUDGE: You swear to the same kind of oath that you swore in here, right?

A. Uh, I think it is a little bit more informal. I might have the same uh binding effect to it, maybe.

JUDGE: This is pretty serious business, isn't it, when you ask to have a guilty plea set aside, wouldn't you think? When you swear to something?

A. Yes.

JUDGE: You know all of this stuff that you put in here, right?

A. Pardon?

JUDGE: You know all of this stuff that you put in here, didn't you?

A. Uh, yes, I put it all in there.

JUDGE: Petitioner's plea of guilty in Cause No. 2–85–CR–13 was not knowingly, intelligently, and voluntarily entered as the court failed to adequately inform him of the minimum possible sentence. You swore to that under oath, didn't you?

MR. SMITH:

Well, your Honor, I ...

JUDGE: Be quite. [sic].

MR. SMITH:

I would just like, if I could ...

JUDGE: Do you want to see it? Isn't that what you said?

A. Yeah, I can recall but it's, well now uh ...

JUDGE: Well, tell me about it.

MR. SMITH:

I would just like for the record to show my objection.

JUDGE: Sure. Swore to that under oath, did you that I forgot to advise you of the minimum sentence?

A. Yeah, but you didn't have to do that.

JUDGE: Yes, I did. Yes, I have to.

A. Well, you have to determine that it's done that way.

. . .

A. Well, I am not saying that you didn't do that but uh ...

JUDGE: You didn't? Well let me read it to you again. Here is what you said under oath. Petitioner's plea of guilty in Cause No. 2–85–CR–13 was not knowingly, intelligently and voluntarily entered as the court failed to adequately inform him of the minimum possible sentence. Isn't that what you said?

A. Yes, uh-huh.

JUDGE: You sure of that when you swore to that under oath?

A. Yes, I said that in the post conviction.

JUDGE: This is the wrong one.

MR. SMITH:

Your Honor, can I see a copy of ... (inaudible) can I see a copy of this petition? I have never seen a copy of this petition. I would like to see what you ...

JUDGE: Well, here it is, sure, help yourself. Did we transcribe that other one?

MR. NAVE [state's attorney]:

This is the guilty plea.

JUDGE: No, in the receiving stolen property?

MR. NAVE:

Uh, I don't know (inaudible). I listened to the tape, your are [sic] right, (inaudible).

JUDGE: Well, is that your position today that uh, under oath that uh I didn't do that?

A. Uh, well, I have never read the transcripts, and this was done on the uh what I could remember at the time.

JUDGE: You swear under oath something that I didn't do just based on your memory?

A. Right.

JUDGE: O.K. That's all."

Record at 642–45.

██ A trial judge may, within reasonable limits, question a witness provided it is to aid the jury in its fact-finding duties, and the questioning is done in an impartial manner so the judge does not improperly influence the jury. *Kennedy*, 258 Ind. at 226, 280 N.E.2d at 620; *Thomas v. State* (1967), 249 Ind. 271, 274–75, 230 N.E.2d 303, 305. Thus, while a trial judge may interrogate a witness to clarify his testimony, *Church v. State* (1984), Ind., 471 N.E. 2d 306, 311, the judge exceeds his fact-finding role when the judge asks questions calculated to impeach or discredit a witness. *Kennedy*, 258 Ind. at 226, 280 N.E. 2d at 620.

Here, the trial judge's examination of Jerry exceeded the legitimate purpose for judicial interrogation of a witness. Its result was to impeach Jerry's testimony favorable to Paul. It also suggested to the jury the judge believed Jerry's exculpatory testimony was false. This opinion was reinforced by the fact that early in Jerry's testimony, the trial judge advised Jerry, in the presence of the jury, concerning the offense of perjury. On cross-examination, Jerry said he had taken a gamble and pled guilty to avoid serving the rest of his life in prison on an habitual offender count. When Jerry began to tell his version of what happened on the night in question, the trial judge interrupted and advised Jerry that he had been under oath when he entered his guilty plea, and that if he testified to "two different things under oath there is a presumption that you are guilty of perjury." Record at 500. Further, Jerry, and through him, Paul, was placed in further jeopardy in the eyes of the jury when, during the judge's questioning, Paul's attorney sought to interpose an objection on at least two occasions but was interrupted by the trial judge's admonition to be quiet.

██ Unquestionably, the record supports Paul's claim the trial judge abandoned his position of impartiality and neutrality and in so doing committed error. Yet, for the error to require a reversal, it must have prejudiced Paul.

The evidence against Paul, other than Jerry's arrest statement, was circumstantial. No one observed the burglary of the garage. The State's witness placed Paul in the yard but then, he, through Jerry, did not dispute that fact. The other testimony concerned the hasp and padlock that had been broken at some time and the discovery outside the garage of a wrench that had been stored inside the garage. Thus Jerry's inculpatory statement was critical to the State's case against Paul. So too, Jerry's testimony was critical to Paul's defense as he was the only witness who refuted the State's case.

As previously recited, the trial judge's opinion as to the lack of credibility of Jerry's exculpatory testimony was readily apparent to the jury. Considering the "awesome respect for the institution of the American trial judge," *Kennedy*, 258 Ind. at 226, 280 N.E.2d at 620, and the aura of authority and integrity surrounding the trial judge, juries accord "great and perhaps decisive significance to the judge's every word and intimation." *Id.* Accordingly, we can only conclude the trial judge's abandonment of his position of neutrality and impartiality was extremely detrimental to Paul's defense of his burglary count. Further, while the State's case on the resisting law enforcement charge did include direct evidence, that evidence also was disputed by Jerry. Thus, the attack upon his credibility necessarily impermissibly tainted Paul's defense to that charge.

A fair trial by an impartial judge and jury is an essential element in the due process guaranteed a defendant by the United States and Indiana Constitutions. Here, that right was impaired by the trial judge's impermissible donning of the adversarial hat and his abandonment of the impartial judicial robes.

Judgment reversed and cause remanded for a new trial.

MILLER, P.J., and SULLIVAN, J., concur.