**Lonnie ISAAC, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 85A02–9106–CR–00248.**

Court of Appeals of Indiana, Second District.

April 20, 1992.

Alan J. Zimmerman, Wabash, for appellant-defendant.

SULLIVAN, Judge.

Lonnie Isaac (Isaac) appeals from the trial court's revocation of probation.[1]

1. Following the revocation hearing, the trial court found Isaac in violation of probation and

More accurately, however, Isaac challenges the refusal of the court to permit the prosecutor to dismiss the revocation petition and asserts that he was denied due process of law because, subsequent to its denial of the State's motion, the trial court improperly assumed the role of prosecutor.

We reverse.

Isaac was found guilty of possession of marijuana and sentenced to two years in the Wabash County Jail. On April 18, 1989, the court granted Isaac's request to serve the remainder of his sentence on probation, said probationary period to last until October 18, 1990. On September 6, 1989, the State filed a petition for revocation of probation based upon Isaac's continued use of marijuana. Isaac admitted the charges contained in the petition at a September 28, 1989 revocation hearing, whereupon the court ordered Isaac to spend four additional weekends in the county jail. On March 2, 1990, the State filed another petition for revocation of probation, again based upon continued use of marijuana. On March 28, 1990, the State filed yet another petition for revocation of probation, this time based upon Isaac's failure to appear at regularly scheduled meetings with his probation officer. On June 29, 1990, a hearing was conducted pursuant to the State's two pending petitions for revocation.

At the hearing, the Prosecutor informed the judge that the State and Isaac had agreed that Isaac would admit the violations alleged in the petitions and that the State would recommend only a one-year extension of probation. The State's leniency was a result of Isaac having tested negative for marijuana use several times, having married, and securing employment and joining a labor union—all since the March 28, 1990 petition for revocation was filed. However, the judge refused to accept the arrangement, and instructed the Prosecutor and Isaac to confer outside of the courtroom in order to arrange a more

acceptable alternative. After conferring briefly, the State reported that the two sides could not agree upon an alternative, and consequently the State moved to dismiss both petitions.

The court granted the State's motion as to the March 2 petition (marijuana use), but denied the motion as to the March 28 petition (failure to attend meetings with the probation officer). The Prosecutor informed the court that the State had no evidence to present, whereupon the judge expressed his intention to call a witness on behalf of the court, a procedure to which Isaac's counsel objected. The court then called Wendell Wilson (Wilson), the probation officer whose appointments Isaac allegedly failed to keep. The court questioned Wilson concerning the violations alleged in the petition.

Isaac argues that the court's actions in the June 29 hearing violated his due process rights.[2]

### I. *Statutory Dismissal by Prosecutor*

Isaac contends that the judge's actions were contrary to I.C. 35-34-1-13 (Burns Code Ed.1985), which states:

"(a) Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information. The motion may be made at any time before sentencing and may be made on the record or in writing. The motion shall state the reason for dismissal."

Isaac correctly notes that the statute uses the mandatory "shall," indicating that the court may not deny a prosecutor's motion to dismiss. Indeed, our courts have consistently held that courts have no discretion to deny a prosecutor's motion to dismiss an indictment or information. *See, e.g., Burdine v. State* (1987) Ind., 515 N.E.2d 1085; *Maxey v. State* (1976) 265 Ind. 244, 353 N.E.2d 457. However, no Indiana court has decided whether the provision is applicable to a motion to dismiss revocation of probation petitions.

sentenced him to an additional 90 days in jail.

**2.** The State, by the Attorney General, waived the filing of an appellee's brief and recommended that this court reverse the decision of the trial

court. The trial court filed a petition to appear as a party or, in the alternative, to file an amicus curiae brief. This court denied that petition.

In the context of the issue now before us, the filing of indictments and informations differs most notably from the filing of a petition to revoke probation because of the nature of the court's participation in the respective proceedings. The trial court's task as trier of fact and arbiter of the law in a criminal prosecution does not begin until criminal charges are filed. Its role is limited, as will be hereinafter discussed, to deciding matters properly placed before it. In that sense its role is passive. Its participation comes generally in the form of reaction (i.e., to motions, requests, evidence and the like, as well as to ensure observance of applicable rules, deadlines and procedures), as opposed to action generated upon its own volition.

■ Probation, on the other hand, is pursuant to court discretion and supervision from the outset. I.C. 35–38–2–2.3 (Burns Code Ed.Supp.1991). Its involvement ranges from the granting of probation and setting of terms to making a determination whether probation has been violated and what, if any, sanctions to impose for such violation. Seemingly, then, a trial court's role in revocation proceedings is appropriately more active than its role in the underlying criminal proceedings. Among other reasons, the court is involved in a supervisory capacity before a petition to revoke is ever filed. The two situations are not sufficiently similar so as to be interchangeable for purposes of construing the statute.

We therefore decline to extend the mandate of I.C. 35–34–1–13 to include motions to dismiss revocation of probation proceedings. Ind.Code 35–34–1–13 clearly includes only indictments and informations within its ambit, and we must assume that a more expansive application of its prohibition, if intended, would have been made manifest in its language.[3] To be sure, if the court refuses to accept the State's Motion to Dismiss a revocation petition, it is very likely that the court will subsequently inject itself into the proceedings so as to run afoul of constitutional principles hereinafter discussed. However, in such a case, as here, the error requiring reversal occurs not when the trial court fails to grant the State's motion, but rather in the Court's subsequent actions.

## II. *Separation of Functions*

■ Isaac argues that the trial court committed fundamental error when it called Wilson as a witness and conducted the examination. An error is fundamental if it is blatant, and if it would deny the petitioner fundamental due process if left unrectified. *Bailey v. State* (1985) Ind., 472 N.E.2d 1260, 1263.

■ It is axiomatic that in Indiana due process includes the right to a fair trial by an impartial judge and jury. *Kennedy v. State* (1972) 258 Ind. 211, 280 N.E.2d 611, 615. Although a revocation proceeding is not a trial in the strictest sense, it is, like a

**3.** It is unclear whether the prosecutor's office is vested with authority to file a revocation petition in the first place. Ind.Code 35–38–2–3 (Burns Code Ed.Supp.1991) specifies that a petition be filed as a condition precedent to revocation, but it is silent as to who may, or who may not, file such a petition. It apparently is common practice in some counties throughout the State of Indiana that revocation petitions are filed either by prosecutors' offices (as here) or by probation departments. *See e.g.,* Indiana Judicial Center, Criminal Benchbook for Indiana Judges, Form 20.03 (2d Ed.1984). This casts adverse reflection upon the State's argument that a trial court must grant a prosecutor's motion to dismiss revocation proceedings, because it is not clear that the prosecutor's office has statutory authority to initiate such a petition. Even if the prosecutor's office has such authority, it arguably shares that authority with others, including probation departments.

Nonetheless, the State has the burden to prove probation violation by a preponderance of the evidence. I.C. 35–38–2–3(e). It cannot seriously be argued that the trial court may act on behalf of the State in performing this function. It therefore seems preferable that the prosecuting attorney file the revocation petition. Yet, as noted, we discern no provision in the statute which prohibits the probation department from filing the revocation petition in the first instance. To this extent, then, it may be that the prosecuting attorney may not arbitrarily dismiss a probation revocation petition. However, unless a particular probation department has its own counsel, we are at a loss to understand how any attorney other than the prosecuting attorney of the county can perform the required functions.

trial, a hearing at which evidence is presented by which the State seeks to prove facts which may result in the deprivation of personal liberty. Accordingly, the United States Supreme Court has held that in revocation of probation proceedings, although a defendant is not accorded the full panoply of rights due in a criminal prosecution, certain due process rights nonetheless inhere. *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. Included in these rights is the right to a neutral and detached hearing body. *Id.*, 411 U.S. at 786, 93 S.Ct. at 1762. The question posed in the instant appeal is whether the trial court's actions in the hearing were inconsistent with its duty to remain neutral and detached.

■ The Indiana Constitution states: "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Ind.Const. art. 3, § 1. Therefore, the judiciary may not exercise any function constitutionally assigned to either of the legislative or executive branches. *State ex rel. Indiana State Board of Finance v. Marion County Superior Court, Civil Division* (1979) 272 Ind. 47, 396 N.E.2d 340. Although probation is administered under court supervision, it does not necessarily follow that every facet of the probation process is conducted under the auspices of the judiciary. Because Indiana courts have not addressed this particular subject, we look to the law of other states for assistance.

In *People v. Williams* (1990) 186 Mich. App. 606, 465 N.W.2d 376, the defendant committed a crime while on probation. The prosecutor filed a petition seeking to revoke probation. At the revocation hearing, the court inquired whether the prosecutor would decline to file criminal charges for the activity which served as the basis for the revocation petition.[4] Apparently based upon the prosecutor's negative response, the trial court upon its own motion dismissed the petition. In reversing the trial court's dismissal, the appellate court discussed the separate functions of the judicial and executive branches.

The court noted that the trial court's authority over the prosecutor's office in the discharge of its duties is limited to three areas: 1) the trial court may determine whether probable cause exists relative to charges brought against defendants, and therefore decide whether a defendant is to be bound over for trial; 2) similarly, the trial court may review the decision to bind a defendant over for trial for abuse of discretion; and 3) sitting as fact-finder, the trial court may decide whether the prosecutor has met the applicable burden of proof in establishing a defendant's guilt. *Williams, supra*, 465 N.W.2d at 379. The court stated that the trial court does not have authority to review the prosecuting attorney's exercises of discretion outside of the aforementioned areas, and that in dismissing the petition upon its own motion, the court had exceeded the constitutional authority vested in the judiciary.

Isaac frames his argument in terms of separation of powers, but the more appropriate terminology is separation of functions. Although the concepts of separation of powers and separation of functions are often used interchangeably, the two concepts are not identical.

"The object of the separation of powers is to preclude a commingling of three essentially different powers in the same hands in the sense that the acts of each shall never be controlled by or subjected directly or indirectly to the coercive influence of either of the others." *Rush v.*

---

**4.** Apparently, the trial court's request involved a program known as the Prosecutor's Revocation and Resentencing Program (RRP). Under the RRP, if a probationer commits a crime while on probation that is equal to or less serious than the one upon which he or she was on probation, the prosecutor's office will pursue the probation violation, but will not file additional criminal charges. The purpose of the program apparently involves a degree of economy in utilization of jail facilities and judicial time.

*Carter* (1984) 1st Dist.Ind.App., 468 N.E.2d 236, 238.

Separation of powers is a means of preventing a focalization of the awesome powers conferred upon and exercised by government, via distribution among and between the three branches of government of the various roles that government must fulfill. By limiting the role, or function, that a particular branch of government may perform, our Constitution thereby limits the extent of that branch's power, along with the concomitant potential for abuse of that power. The separation of functions, therefore, results in a diffusion or separation of powers. A branch of the government runs afoul of article III, section 1 when it performs a function constitutionally assigned to one of the other two branches. Therefore, the resolution in the instant case involves not only an inquiry into whether the trial court undertook an action which it had no power to undertake, but also requires an evaluation of the function that the trial court performed during the hearing.

■■■ Isaac's due process right was not necessarily infringed upon merely by virtue of the fact that the trial court called and interrogated a witness. A court has authority to call and interrogate witnesses within reasonable limits. *Decker v. State* (1987) 2d Dist.Ind.App., 515 N.E.2d 1129, 1134. However, the trial judge's exercise of this power is proper only when done within the context of the court's participation in the fact-finding process. Accordingly, a trial judge may interrogate a witness in order to clarify testimony but may not, for example, ask questions calculated to impeach or discredit a witness. *Id.* When a trial judge undertakes to impeach or discredit, he or she abandons the role safeguarding the fact-finding process and adopts the role of advocate.[5] Thus, the action is constitutionally infirm, not because court interrogation is a *per se* constitutionally prohibited act, but rather because the judge steps outside of his or her constitutionally assigned role in doing so, and thereby "abandon[s] ... the impartial judicial robes." *Id.*

We have previously discussed this issue, albeit briefly, in the context of a revocation hearing. In *Ratliff v. State* (1990) 2d Dist. Ind.App., 546 N.E.2d 309, *trans. denied*, the defendant appealed the trial court's order to revoke probation, based upon nonpayment of support. At the revocation hearing the trial court questioned the defendant about his payment of support. In reversing the trial court's order, we stated:

> "[T]he only evidence pertinent to culpability was presented at the September 19, 1988 revocation hearing. The evidence at that hearing was obtained by the trial court by interrogating Ratliff. That procedure, to the extent the trial court proceeded, violated the court's responsibility to serve as a fact-finder, not a fact-presenter. The burden of proof in a revocation proceeding is on the State, not the trial court. *Ratliff, supra*, 546 N.E.2d at 312 n. 3."

Implicit in the above is the notion that the respective roles of the State, through the prosecutor, and of the trial court are distinct and not interchangeable in a revocation proceeding.

In the instant case, the judge indicated that the basis of his belief that his actions were proper involved the perceived differences between standard criminal prosecutions (at which the court has no discretion to deny a motion to dismiss) and revocation proceedings:

> "I don't agree with all the characterizations made by [defense counsel] on [behalf of Isaac] about what actually occurred [at the revocation hearing], this wasn't a dismissal of criminal charges,

---

**5.** There can be little doubt that the trial court here assumed the role of advocate, and in so doing adopted a position adverse to that of Isaac. After the Prosecutor's motion to dismiss was denied and he declined to participate in the proceedings, there were only two parties left— Isaac and the trial court. Since Isaac was not going to present the case against himself, that task fell by default upon the trial court. Further evidencing the trial court's advocacy role is the fact that it petitioned this court for permission to file a brief, said petition entitled "Petition To Appear, To Recognize The Wabash Circuit Court As A Party To This Action, Or, In The Alternative, Petition To File A Brief As Amicus Curiae." The petition was denied.

this was a dismissal or requested dismissal by the Prosecuting Attorney of Probation Violation. Something that the Court must have some, at least in this Court's opinion, must have some authority to determine whether or not should be granted otherwise any persons placed on probation by the Court would be subject to the determinations of the Prosecuting Attorney as to whether they should or should not, #1 be prosecuted for any violation or whether any sanctions should be received if there is a violation of probation." Record, Volume II, at 87–88. Nonetheless, the hearing in question reflects the inevitable result of a commingling of the respective functions of the executive and judicial branches within the context of the criminal justice system.

The trial court was asked to rule upon objections to questions that the court itself had posed:

"THE COURT: As a part of your duties, were you the officer of monitoring the probation of Mr. Isaac, Lonnie Isaac?

MR. ZIMMERMAN [defense counsel]: Objection, leading, calls for a yes or no answer.

THE COURT: You may answer the question.

[Witness]: Yes.

MR. ZIMMERMAN: Was there a ruling on on [sic] my objection?

THE COURT: When I told him he could answer the question that meant your question was overruled." Record, Volume I, at 61–62.

Defense counsel's confusion was both understandable and inevitable in a setting in which the court assumed two conflicting roles. An even more confusing dialogue occurred moments later when the court asked Isaac's counsel whether he wished to present any witnesses.

"MR. ZIMMERMAN: Just a moment, Your Honor. Your Honor, if I put the Defendant on the stand, is the Court going to be ruling on any objections from the State and cross-examining my witness?

THE COURT: The Prosecutor hasn't to date, participated in the proceedings, I don't know whether he will be on any cross-examination, but, why don't you ask your question again now. If you put the Defendant on the stand ...

MR. ZIMMERMAN: Okay. If I put the Defendant on the stand, will he be subject to cross-examination by both the State and/or the Court?

THE COURT: Not by both the State and or the Court, and the Court, possibly if the State does not participate in the proceedings, then by the Court.

MR. ZIMMERMAN: Your Honor, is this, uh, is this our case in chief now, is this our time to go forward?" Record, Volume I, at 68–69.

The confusion caused by the proceedings was evidenced again in the following exchange, which took place as Isaac's counsel was examining Wilson.

"THE COURT: Mr. Zimmerman, is this [line of questioning] relevant to the failure to report issue that had been raised on (inaudible).

MR. ZIMMERMAN: Your Honor, I've got to inquire as to what function the Court's now taking.

\* \* \* \* \* \*

THE COURT: I think the Court always has the (inaudible) authority with regard to presentation of evidence that if something is presented outside the scope of the evidence to limit that evidence so that judicial economy can be [attained].

MR. ZIMMERMAN: Well, are you doing that or are you acting more in the role of presenting enough evidence for a, uh, to get enough evidence on the record for revocation in your advocate role. I need to understand how you're going forward at this time." Record, Volume I, at 70–71.

The above examples underscore the importance of maintaining separation of functions, and amply illustrate the confusion inherent in a criminal justice system in which the fact-finder doubles as the fact-

presenter.[6] That the confusion which results from commingling of the two roles (and was actually experienced by Isaac here) would result in prejudice is beyond debate. In addition, prejudice to the defendant follows as a natural consequence of the adversarial relationship resulting from a recasting of the judiciary's role.

The trial court erred in assuming the State's prosecutorial advocative role in this proceeding. Accordingly, the judgment is reversed and the cause is remanded to the trial court with instructions to vacate the judgment and to vacate the ninety additional days of jail time imposed by court order on March 7, 1991.

BUCHANAN, J., concurs.

SHIELDS, J., concurs and files separate opinion.

SHIELDS, Judge, concurring.

I concur in Issue I of the majority opinion only to the extent it holds IC 35-34-1-13 (1988) does not include motions to dismiss revocation of probation proceedings. In my opinion, in most unambiguous terms, the statute addresses only indictments and information.

I concur in Issue II of the majority opinion only to the extent it holds the trial court denied Isaac due process by assuming the role of a fact-presenter rather than a fact-finder. The nature and extent of the trial court's questions extend far beyond a trial court's legitimate participation in the fact-finding process.

Although I do not concur in any other aspects of the majority opinion, I want to particularly express my disagreement with the *dictum* that states a preference for probation revocation petitions to be filed by prosecuting attorneys and with the implica-

tion of that *dictum* that the decision whether to proceed with a probation revocation is, in the first instance, a function of the prosecutor. *See supra* note 3. I also disagree with the majority opinion addressing the issue as fundamental error; Isaac objected to the trial court's actions at the hearing, thereby preserving the issue for appeal.

---

**6.** Indeed, this separation of function is nowhere more important than in the criminal justice system. As the United States Supreme Court has stated:

"A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process.... The complicated process of criminal justice is therefore divided into different parts, responsibility for which is sepa-

rately vested in the various participants upon whom the criminal law relies for its vindication." *McNabb v. United States* (1943) 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819. Although the Court in *McNabb* addressed this issue in the context of the executive branch performing a judicial function (the opposite of the instant case), the evil to be avoided in both cases is the same.