**Lonnie ISAAC, Appellant (Defendant Below),**

v.

**STATE of Indiana and Wabash County Probation Department, Dallas Duggan, in his capacity as Chief Probation Officer, Appellees (Plaintiffs Below).**

No. 85S02–9212–CR–1025.

Supreme Court of Indiana.

Dec. 23, 1992.

Alan J. Zimmerman, Wabash, for appellant.

Mary Nold Larimore, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

SHEPARD, Chief Justice.

Appellant Lonnie Isaac's probation officer reported that he had failed to keep the scheduled appointments which were a condition of his probation. A petition to revoke probation was initiated, but the prosecutor moved to dismiss it and declined to present evidence. Isaac contends the trial court erred by denying the motion to dismiss and proceeding to question the probation officer. We grant transfer and hold otherwise.

## I. Case History

Lonnie Isaac was found guilty of possession of marijuana and sentenced to two years in the Wabash County Jail. On April 18, 1989, he was placed on probation for a period to last until October 18, 1990. On September 6, 1989, the prosecuting attorney filed a petition for revocation of probation. At the revocation hearing on September 28, 1989, Isaac admitted violating his probation by using controlled substances. He was continued on probation and ordered to serve four consecutive weekends at the Wabash County Jail.

In March 1990, the prosecutor filed two more petitions to revoke Isaac's probation. The first petition alleged that Isaac violated his probation by using a controlled substance. The other petition, obviously initiated by Isaac's probation officer, alleged that Isaac violated his probation by failing to appear for regularly scheduled meetings with his probation officer. What occurred at the hearing on these two petitions is the subject of this litigation.

The court ordered a hearing on the petitions for June 29, 1990. The prosecuting attorney appeared, and Isaac appeared in person and by counsel. The prosecutor informed the judge that the parties had agreed that Isaac would admit the alleged probation violations in return for a one-year extension of his probation. The court refused to accept the agreement and recommended that the parties confer to see if they could come to a more satisfactory arrangement. When the hearing resumed a short time later, the prosecutor informed the court that the parties had not come to an alternative agreement, and he moved to dismiss both petitions. The court granted the motion to dismiss the first petition (controlled substances violation) because the prosecutor stated he did not have the witnesses present who were necessary to the admission of the results of Isaac's drug test. The court denied the motion to dismiss the second petition (failure to report to the probation officer) because Isaac's probation officer was present at the hearing and could testify about whether Isaac had appeared for his meetings.

The prosecutor then declined to present any evidence on the revocation petition, so the judge called the probation officer, Wendell Wilson, to the stand and asked Wilson whether Isaac had failed to report. Isaac's attorney then conducted cross-examination. Based on Wilson's testimony, the court found that Isaac failed to report for six consecutive appointments with his probation officer in violation of the terms of his probation.

The court stayed entry of its finding that probation was violated so the parties could brief on any procedural issues they might wish to raise. After considering these briefs the court held that its actions during the hearing were lawful. On March 7, 1991, it conducted a further hearing on an appropriate sanction for the violation. The court ordered that Isaac serve an additional ninety days executed time on the sentence previously entered and recommended work release. It granted a stay of execution pending Isaac's appeal.

On appeal, Isaac contended that the trial court erred in refusing to dismiss the petition on the prosecutor's motion. He also contended that by calling and questioning the probation officer, the court violated his rights under the equal protection and due process clauses. The Court of Appeals held that the trial court was authorized to refuse to dismiss and upheld the refusal. *Isaac v. State* (1992), Ind.App., 590 N.E.2d 606. We grant transfer and adopt the Court of Appeals opinion on this issue. Ind. Appellate Rule 11(B)(3).

The Court of Appeals also held that the trial court violated the separation of functions section of the Indiana Constitution by calling and questioning the probation officer. It therefore reversed. We now turn to Isaac's contentions concerning this procedure.

## II. General Procedure for Probation Revocation

There is no right to probation, and the decision whether to grant probation is a matter within the discretion of the trial court. *Farmer v. State* (1973), 257 Ind. 511, 275 N.E.2d 783. The court determines the conditions of probation and may revoke probation if these conditions are violated. Ind. Code Ann. §§ 35–38–2–1 to –3 (West 1986). As part of its supervisory duties, the court appoints probation officers who are directly responsible to the court and subject to its orders. Ind. Code Ann. § 11–13–1–1 (West 1982). One of the duties of probation officers is to notify the court when a violation of a condition of probation occurs. Ind. Code Ann. § 11–13–1–3(7) (West 1982).

■ Probation revocation is governed by Ind. Code Ann. § 35–38–2–3 (West 1986). The statute does not specify who is to file a petition for probation revocation but common practice is that it may be filed by either the probation officer or the prosecuting attorney. *See, e.g., Malone v. State* (1991), Ind.App., 571 N.E.2d 329 (no error in probation officer filing motion for revocation); *Dalton v. State* (1990), Ind.App., 560 N.E.2d 558 (prosecutor filed motion to revoke); Indiana Judicial Center, Criminal Benchbook for Indiana Judges, Form 20.03 (2nd Ed.1984) (petition for probation revocation form to be signed by probation officer). When a petition to revoke is filed, the court must hold a hearing on the alleged probation violation. Ind. Code Ann. § 35–38–2–3(c) (West 1986).[1] A revocation hearing is in the nature of a civil action, and the alleged violation need be proven only by a preponderance of the evidence. *Henderson v. State* (1989), Ind., 544 N.E.2d 507.

### III. Prosecutor's Duty

The prosecuting attorney is a constitutional officer and an officer of the court. Ind. Const. art. 7, § 16; *State ex rel. Latham v. Spencer Circuit Court* (1963), 244 Ind. 552, 194 N.E.2d 606. A prosecutor's duties are prescribed in general terms by statute. *Id.;* Ind. Code Ann. § 33–14–1–4 (West 1982). Although prosecuting attorneys are primarily concerned with prosecuting criminal matters, they also perform duties of a civil nature such as assisting the court by presenting evidence at probation revocation hearings. *Cf. Latham,* 244 Ind. at 556, 194 N.E.2d at 607. We perceive that refusals to perform this duty are rare. The question posed in this case is what options are available to the court when such a refusal does occur.

■ One possible option open to a judge when the prosecutor refuses to present evidence on a revocation petition is to appoint a special prosecutor. The court has a duty to relieve a prosecutor where he is disqualified by reason of prejudice or hostility to the state's interest. *Hendricks v. State* (1964), 245 Ind. 43, 196 N.E.2d 66. This does not mean that a prosecutor is subject to an arbitrary order of disqualification at the whim of a trial judge. *King v. State* (1979), Ind.App., 397 N.E.2d 1260. If the regular prosecutor objects to his disqualification, the trial court must afford the regular prosecutor an opportunity to be heard before making a determination of disqualification. *Id.* at 1266.

■ Because probation is subject to the court's supervision, a petition to revoke probation may not be dismissed without the court's permission.[2] If a prosecutor refuses to proceed with the evidence after his motion to dismiss is denied, the court may relieve him. The prosecutor would be disqualified by reason of his failure to act. The court may then appoint a special prosecutor to go forward with the evidence of the alleged violation. *Cf. Dukes v. State* (1858), 11 Ind. 557, 563 (court has inherent power to appoint attorneys to conduct prosecution of criminal when necessary to prevent failure of justice).

Because of the costs and delays involved in appointing a special prosecutor, however, this cannot be the only option available to a judge faced with a potential probation violator and no prosecutor to present evidence of the violation. The judge faced with this problem in the case at bar chose to question the probation officer himself. Isaac claims that by calling and questioning the probation officer, the judge abandoned his judicial role and took on the role of prosecutor, thereby violating his due

---

1. Current version at Ind.Code Ann. § 35–38–2–3(d) (West Supp.1992).

2. The Court of Appeals correctly held that Ind. Code § 35–34–1–13, requiring the court upon motion of the prosecuting attorney to dismiss an indictment or information, did not include motions to dismiss probation revocation petitions. *Isaac v. State* (1991), Ind.App., 590 N.E.2d 606. In an ordinary criminal case, however, if the prosecutor moves to dismiss an indictment or information the court would be obliged to grant the motion. Ind.Code Ann. § 35–34–1–13 (West 1986); *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1089.

process right to a hearing before a neutral and detached hearing officer.

■ A defendant at a probation revocation hearing is not endowed with all the same rights he possessed prior to his conviction. *Henderson,* 544 N.E.2d at 512. Formal procedural and evidentiary rules required at criminal trials are not required at probation revocation hearings. *Gagnon v. Scarpelli,* 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973). There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. *Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1760; *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). Indiana Code § 35–38–2–3(d) (West 1986)[3] also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

We can think of three rather different settings which illuminate the boundaries of judicial participation and due process in adjudication.

■ First, while a trial judge may not assume an adversarial role in any proceeding, we have held that the judge may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity. *Fox v. State* (1986), Ind., 497 N.E.2d 221. The purpose of allowing the judge to question witnesses is to permit the court to develop the truth or present facts which may have been overlooked by the parties. *Id.* As long as the questioning is conducted in an impartial manner and the defendant is not prejudiced, such questioning is within the discretion of the court. *Id.*

■ Second, a court may also initiate and adjudicate certain violations of its orders. For example, if a lawyer fails to file a brief by the time designated in an order granting a final extension of time, this Court may order the lawyer to appear and show cause why he should not be found in contempt. At the hearing on this citation, the members of this Court pose questions regarding the violation of the order. There is no prosecutor to present evidence. It is simply a one-issue inquiry into whether there was a willful failure to obey the order. The Court then decides whether to hold the party in contempt. *See, e.g., Matter of Toomey, Brown v. State* (1989), Ind., 532 N.E.2d 608; *Matter of Cowen, Hough v. State* (1989), Ind., 539 N.E.2d 24; *Eaton v. State, In re Payne* (1991), Ind.App., 566 N.E.2d 550.

Third, this same principle of due process may be seen in quite a different context: discharge of an employee by a public officer in situations in which the supervisor who brings the charges also participates in the decision disposing of the matter. The Seventh Circuit, and others, have rejected due process claims against such procedures. *Panozzo v. Rhoads,* 905 F.2d 135 (7th Cir.1990) ("plaintiff must overcome the presumption that decision-maker is [a person] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances," quoting *Withrow v. Larkin,* 421 U.S. 35, 53–54, 95 S.Ct. 1456, 1467–68, 43 L.Ed.2d 712). *Accord Duchesne v. Williams,* 849 F.2d 1004, 1008 (6th Cir.1988), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840; *Brasslett v. Cota,* 761 F.2d 827, 836–37 (1st Cir.1985).

The lesson of these examples is that where the matter being decided is immediately within the knowledge or view of the judge or his officers, due process permits the judge to deal more directly with the matter than would be the case if the events under consideration occurred farther away from the judge's purview.

## IV. Court's Role in This Case

■ We conclude that by calling and questioning the probation officer in this situation the trial judge did not abandon his

---

**3.** Current version at Ind.Code Ann. § 35–38–2– 3(e) (West Supp.1992).

role as neutral fact finder.[4] The questions the judge asked were very straight forward and clearly intended to develop the truth and ascertain the facts. The questions were designed simply to determine whether Isaac showed up for his regularly scheduled appointments[5], an issue within the personal knowledge of the probation officer. Although there may have been some awkwardness when defense counsel objected to the questioning, there was nothing in the questioning to indicate the judge was anything but impartial. A trial judge is not transformed into a prosecutor by calling and asking questions of the court's own probation officer to determine whether the court's probation order has been violated.

Isaac argues the language of Ind.Code § 35–38–2–3(d) (West 1986), "The state must prove the violation ...", means that only the prosecutor can present evidence of the alleged violation. A probation revocation hearing is not, however, to be equated with an adversarial criminal proceeding. *Gagnon*, 411 U.S. at 789, 93 S.Ct. at 1763.[6] It is a narrow inquiry, and its procedures are to be more flexible. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. At a probation revocation hearing the court is only trying to determine whether its probation order has been violated. The prosecutor usually assists by presenting evidence of a violation of the terms of the probation. It cannot be said that if the prosecutor refuses to present the evidence, however, the court is helpless to enforce its probation order. To deny a court power to enforce obedience to its lawful orders is to nullify its effectiveness as an independent branch of government. *State ex rel. Brubaker v. Pritchard* (1956), 236 Ind. 222, 138 N.E.2d 233. The power of a court to enforce compliance with its orders duly entered is inherent. *Id.*

The language of the statute ("The state must prove") is consistent with the ordinary situation in which the prosecutor presents the evidence of the probation violation. We believe that the import of the statutory language, however, is to ensure the defendant that before his probation can be revoked, any violation must be found by a preponderance of the evidence.

This is not to say that any informal evidentiary hearing would be permissible. This case is not like *Dalton v. State* (1990), Ind.App., 560 N.E.2d 558, and *Weatherly v.*

---

**4.** Other courts which have addressed whether a judge abandons his neutral role by questioning witnesses at a probation revocation hearing have found no due process violation. *See, e.g., People v. Rocha*, 299 N.W.2d 16 (Mich.Ct.App. 1980) (no due process right to have prosecutor present at every probation revocation hearing); *People v. Buford*, 42 Cal.App.3d 975, 117 Cal. Rptr. 333 (1974); *State v. Starbuck*, 239 Kan. 132, 715 P.2d 1291 (1986); *State v. Milton*, 673 S.W.2d 555 (Tenn.Crim.App.1984); *Bennett v. State*, 705 S.W.2d 806 (Tex.Ct.App.1986).

**5.** Some of the questions asked by the court included:

Q: Mr. Wilson, are you an Officer of the Court?

Q: And part of your functions then are to monitor probation on behalf of the Court, individuals granted probationary terms, is that right?

Q: As a part of your duties, were you the officer of [sic] monitoring the probation of Mr. Isaac, Lonnie Isaac?

Q: You filed or did you file with this Court an affidavit of probable cause attached to a Petition for Revocation of Probation, at least a document entitled additional Petition for Revocation of Probation?

Q: As a part of that affidavit, you alleged certain violations of probation of the Defendant?

Q: Alright, more specifically, let me ask whether or not with regard to that affidavit[,] [t]he Defendant in this case failed to report to the Probation Officer as ordered by the Court. Record at 58–63.

**6.** In deciding whether due process required appointed counsel for indigent probationers at probation revocation hearings, the Court discussed the differences between criminal trials and probation revocation hearings:

In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer ...; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation and parole.

*Gagnon*, 411 U.S. at 789, 93 S.Ct. at 1763.

*State* (1990), Ind.App., 564 N.E.2d 350, where no witnesses were sworn to testify and the probationers were not afforded the opportunity to cross-examine or present their own evidence. Here the probation officer was under oath and was subject to cross-examination. Isaac was given an opportunity to present any evidence in his own defense.

We think that when the issue of violation is the subject of complex proof involving multiple witnesses and assessments of credibility, the trial court should appoint a special prosecutor to present the evidence of violation. Here, the evidence was the simplest in nature, essentially like a hearing on direct contempt. There really was no contention that Isaac had complied with the order to report to a court officer. The court's conduct in this case did not offend due process. Therefore, the trial court's judgment is affirmed.

GIVAN, DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result.