## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 07 2019, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Wayne Cilek, *Appellant-Defendant,* | June 7, 2019 |
| | Court of Appeals Case No. 18A-CR-2005 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Natalie Bokota, Magistrate |
| | Trial Court Cause No. 45G03-1406-FA-20 |

**Sharpnack, Senior Judge.**

# Statement of the Case

Anthony Wayne Cilek appeals from the trial court's decision to revoke his probation and to impose the balance of his suspended sentence less time served. We affirm.

# Issue

Cilek presents one issue for our review, which we restate as the following question: Did the trial court abuse its discretion by entering an order that Cilek serve the entire three years of his sentence previously suspended to probation, minus time served, for the admitted probation violations?

# Facts and Procedural History

On June 22, 2017, in Lake County, Cilek pleaded guilty to Aggravated Battery, a Class B felony. The stipulated factual basis reflects that Cilek admitted that he struck his victim, slammed her head against the ground, and choked her until she lost consciousness. Appellant's App. Vol. II, p. 96. The victim was transported to a hospital where she received treatment for her injuries which included a fractured shoulder, fractured ribs, a fractured orbital socket, fractured wrist, fractured vertebrae and bruising. *Id.*

By agreement of the parties and after exploring various placement options, Cilek was sentenced to ten years in the Indiana Department of Correction (DOC) with seven years executed and three years suspended to probation. The State also agreed to dismiss all remaining charges against him. Among the

terms of the Lake Superior Court's rules and conditions of probation, Cilek agreed to this following condition:

> 7. SUPPORT AND COOPERATION: I agree to permit my Probation Officer to make personal visits to my home, employment or elsewhere. I will keep the probation officer informed of my affairs and truthfully answer any questions asked of me. *I understand that I am solely responsible for setting and/or rescheduling my appointment. I will report (face to face) as directed by my Probation Officer and understand that failure to report as directed is a violation.*

*Id.* at 97 (emphasis added).

Later, on December 5, 2017, the Lake County trial court granted Cilek's request to transfer his probation to Starke County, Indiana. However, in its order, the Lake County Court specifically retained the authority to "impose any and all sanctions for any probation violation, and approve any modifications of probation." *Id.* at 120.

On March 5, 2018, the State filed a petition to revoke Cilek's probation, alleging that he had violated the terms of his probation because his whereabouts were unknown. After Cilek was arrested on March 20, 2018, the trial court found that Cilek was indigent and appointed counsel to represent him. The petition was later amended to add the allegation that Cilek had violated the terms of his probation by engaging in criminal activity (failure to register as a sex or violent offender). Cilek denied the allegations and the matter was set for an evidentiary hearing. On the date of Cilek's hearing, the State filed another

amended petition to revoke, adding the allegations that Cilek had failed to attend mandatory meetings with his probation officer since March 2018 and that he had failed to pay probation fees.

[7]     At that hearing, which was held on July 19, 2018, the trial court attempted to determine if an agreement on disposition had been reached or if a new hearing date should be scheduled. Counsel for Cilek initially questioned whether Cilek had been evaluated for mental health court. The trial court indicated that he would not be eligible based on the nature of his original charges. Cilek was allowed to address the court and, during his colloquy with the court, said that he was also disqualified from serving any of his sentence under house arrest because of his medical conditions. He stated that was the reason the sentence in his plea agreement was structured as such.

[8]     Ultimately, during that hearing, Cilek admitted under oath that he violated two of the terms and conditions of his probation by failing to report for mandatory meetings since March 2018, and by failing to pay his financial obligations associated with probation. The parties agreed to immediately proceed to sentencing.

[9]     During the sentencing portion of the hearing, the probation officer asked for imposition of the suspended sentence and reported the number of actual days Cilek had served. The probation officer also noted that the length of the original sentence was a term of the plea agreement. Cilek's counsel asked that

the trial court impose a sentence of time served especially in light of potential difficulties the DOC might have with treating Cilek's medical conditions.

[10] The trial court sentenced Cilek to three years in the DOC with a recommendation for mental health treatment. The trial court stated the following:

> I'm going to be imposing, by necessity, the three year DOC sentence. We will recommend the mental health treatment. They'll do a full evaluation and make sure you receive the treatment and medicine you need. You already have 121 days in, so with day-for-day credit it's 242 days. And it is an unsatisfactory discharge from probation. The matter is disposed. Good luck to you, sir. That will be all.

[11] Tr. Vol. 2, p. 13. Cilek now appeals.

# Discussion and Decision

[12] Cilek contends that the trial court abused its discretion by ordering him to serve his suspended sentence of three years, less time served, in the DOC for the violations to which he admitted.

[13] Reviewing courts evaluate a trial court's decision to revoke probation for an abuse of discretion. *Whatley v. State*, 847 N.E.2d 1007, 1009 (Ind. Ct. App. 2006). As we have often stated, an abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Id.*

[14] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind.

2014). "The trial court 'enjoys wide latitude in fashioning the terms of a defendant's probation.'" *Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012) (quoting *Bailey v. State*, 717 N.E.2d 1, 4 (Ind. 1999)). "Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). "If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Id.*

Probation revocation hearings are civil in nature, and the State must prove an alleged probation violation by a preponderance of the evidence. Ind. Code § 35-38-2-3(f) (2015); *Murdock*, 10 N.E.3d at 1267. If sufficiency of the evidence of the probation violation is at issue, then a reviewing court will consider only the evidence most favorable to the judgment, without regard to weight or credibility, and will affirm if there is substantial evidence of probative value to support the trial court's conclusion. *Murdock*, 10 N.E.3d at 1267.

Probation revocation proceedings are not to be equated with adversarial criminal proceedings. *Isaac v. State*, 605 N.E.2d 144, 149 (Ind. 1992). "It is a narrow inquiry, and its procedures are to be more flexible." *Id.* "We have previously held that, precisely because probation revocation procedures are to be flexible, strict rules of evidence do not apply." *Cox v. State*, 706 N.E.2d 547, 550 (Ind. 1999). Indiana Evidence Rule 101(d) provides that the rules, other than those with respect to privileges, do not apply in probation proceedings.

[17]     The two steps to the revocation process involve 1) a factual determination by the trial court that a violation of a condition of probation occurred, and 2) if so, a determination whether the violation warrants a revocation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008) (citing *Morrissey v. Brewer*, 408 U.S. 471, 479-80, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). "When a probationer admits to the violations, the procedural safeguards of *Morrissey* and the evidentiary hearing are unnecessary." *Woods*, 892 N.E.2d at 640. The court may proceed directly to the second step of the process. *Id.* "However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.*

[18]     The probation violations filed against Cilek charged as follows:

> **VIOLATIONS:**
> **RULE #4:  LAWS AND CONDUCT:**
> *-The defendant engaged in criminal activity as shown by his arrest for Failure to Register as a Sex or Violent Offender, a Level 6 Felony in Starke County, Indiana.  Case#75C01-1712-F6-000214.
>
> -The defendant engaged in criminal activity as shown by his arrest for Failure to Register as a Sex or Violent Offender, a Level 6 Felony in Starke County, Indiana.  Case #75C01-1803-F6-00040.
>
> **RULE #7:  SUPPORT AND COOPERATION:**
> *-The defendant has failed to report for his mandatory meetings since March 2018.

-The defendant was transferred to Starke County Probation on December 5, 2017. The Starke County Probation Department closed interest in his case due to non-compliance and the defendant residing back in Lake county[sic]. I received a call on March 1, 2018 stating that the defendant was in the in-patient unit at Regional Mental Health and he was scheduled to come to Lake County Probation on March 8, 2018. On March 5, 2018, Probation Officer Jacob Sherron received a call from Regional Mental Health stating the defendant had left the inpatient [sic] unit on March 2, 2018. The defendant's whereabouts are unknown at this point.

**RULE #11: FINANCIAL OBLIGATIONS:**
\*-The defendant was ordered to pay Probation fees in the amount of $690.00. He has not made any payments and is behind $255.00.

Appellant's App. Vol. II, p. 145. Cilek admitted to violating Rules 7 and 11.

Indiana Code section 35-38-2-3(g) (2015) provides that "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." The Supreme Court of the United States held in *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), that courts may not revoke probation because of a defendant's failure to pay a fine or restitution without first making an inquiry into the reason for that failure to pay. As our Supreme Court stated in *Woods*, "failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation." 892 N.E.2d at 641. Further, as our Chief Justice wrote in a dissenting opinion to the denial of a petition for transfer, "incarceration is

reserved for those who **can** pay, but won't–not for those who merely **can't** pay." *Martin v. State*, 115 N.E.3d 1272, 1273 (Ind. 2019).

[20]  Cilek, who was represented by appointed counsel after being found indigent, admitted to violating this rule. However, after his admission, there was no inquiry into his ability to pay and he offered no evidence in mitigation of the admitted violation. Thus, it appears that the trial court erred by failing to make the additional inquiry after the admission. Nevertheless, this was not the only violation to which Cilek admitted.

[21]  Indiana Code section 35-38-2-3(h) (2015), provides the trial court with the following options if it has found that the probationer violated a condition of probation during the probation period:

>    (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
>    (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
>    (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[22]  Cilek also admitted to violating Rule 11. Unlike violations involving financial obligations, once the probationer has admitted the violation, the trial court may proceed to the second step. We observe that "proof of a single violation of the conditions of probation is sufficient to support the decision to revoke

probation." *Bussberg v. State*, 827 N.E.2d 37, 44 (Ind. Ct. App. 2005), *trans. denied.*

[23] The probation violation alleged that one of Cilek's probation officers received a telephone call that on March 1, 2018, Cilek was located at the in-patient unit at Regional Mental Health and he was scheduled to come to the Lake County Probation Department on March 8, 2018. On March 5, 2018, one of Cilek's probation officers received a call from Regional Mental Health stating that defendant had left the in-patient unit on March 2, 2018. After that, Cilek's whereabouts were unknown, a petition to revoke his probation was filed in Lake County, and the trial court issued a bench warrant for Cilek's arrest.

[24] Prior to being sworn to testify, Cilek engaged in a colloquy with the trial court during which he stated he had been diagnosed with dementia and that he had a long history of mental illness. He further stated that he heard voices and saw things. Cilek said he was in the hospital counselor's office when he received a call from his probation officer. The probation officer instructed him to report to Brother's Keeper upon leaving the counselor's office.

[25] Cilek informed the court that upon leaving the counselor's office, he checked in at the sheriff's department, called his probation officer, and went to Brother's Keeper. Cilek claimed that he started hearing sirens and voices while at Brother's Keeper, decided to leave, and walked to a bus station. Cilek called a friend and called his wife telling both of them that he was going to St.

Catherine's in East Chicago. He also told them that he was going to take all of the medications he had in his possession. He then boarded the bus.

[26] Cilek told the court that he took all of the pills, including thirty 100 milligram doses of Trazodone, thirty 100 milligram doses of Seroquel, and thirty 200 milligram doses of Seroquel. He walked into the emergency room and handed over a piece of paper with his wife's name and phone number and his probation officer's name and phone number on it. He instructed the person there to notify them about what had happened. Cilek stated that he was in a coma for seven days and was in the hospital for about two more weeks after that. Later, while under oath, Cilek reiterated his mental health issues, and pointed out that he had a wife and three children and a mother who was in poor health.

[27] We note that Cilek admitted he had missed at least the March 8, 2018 appointment with his probation officer and had attended no further meetings. To the extent he claims that the imposition of the remainder of his suspended sentence is too harsh based on missing one appointment, we find that this argument appears to be a challenge to the sufficiency of the evidence and an attempt to have this court reweigh the evidence offered in mitigation. Based on our standard of review, we decline the invitation to do so.

[28] Cilek also argues on appeal that the trial court misapprehended its options when making a sentencing decision for the probation violation. More specifically, Cilek focusses on the trial court's use of the language "I'm going to be imposing, *by necessity*, the three year DOC sentence." Tr. at 13 (emphasis

added).  Cilek contends that the trial court abused its discretion by failing to recognize Cilek's mental health issues as a mitigating circumstance for purposes of imposing the sentence for the admitted probation violation.

[29] In probation revocation proceedings, trial courts are not required to balance aggravating or mitigating circumstances when imposing a sentence for a violation.  *Treece v. State*, 10 N.E.3d 52, 59 (Ind. Ct. App. 2014), *trans. denied* (citing *Mitchell v. State*, 619 N.E.2d 961, 964 (Ind. Ct. App. 1993)).[1]  In *Patterson v. State*, 659 N.E.2d 220, 223 n.2 (Ind. Ct. App. 1995), a separate panel of this Court clarified that although a trial court must consider evidence offered in mitigation of revocation, including mental health issues, the trial court is not required to balance aggravating and mitigating circumstances when imposing the sentence for a probation revocation.

[30] Additionally, courts on review have consistently held that plea agreements are contracts.  *Archer v. State*, 81 N.E.3d 212, 215 (Ind. 2017).  Once a trial court accepts a plea agreement, the terms of that agreement are binding on the trial court, the State, and the defendant.  *Id.*  Therefore, the principles of contract

---

[1] A fair reading of *Mitchell* leads us to the conclusion that the panel in that appeal perceived the probationer's argument to involve a balancing of aggravating and mitigating factors.  The appellant seemed to suggest that the trial court abused its discretion by imposing the previously suspended sentence because the record contained an abundance of evidence of the probationer's mental health issues.  The panel affirmed the trial court's decision, noting that the trial court had no duty to balance aggravating and mitigating circumstances when imposing a sentence for a probation revocation.  The decision was clarified by another panel of this Court in *Patterson v. State*, 659 N.E.2d 220, 223 n.2 (Ind. Ct. App. 1995).

law can provide courts on review with guidance when considering plea agreements. *Id.*

[31] Cilek agreed to the length of his sentence and to the number of years executed and the number of years to be spent on probation. He was aware of his disqualification for other sentencing options due to medical conditions and discussed this with the trial court. Had the trial court imposed a sentence for time served as requested by Cilek's counsel, that sentence would have been in contravention of the plea agreement. In other words, by violating the conditions of his probation, Cilek would have obtained a more favorable sentence than the one negotiated for and agreed to in his plea agreement. These factors explain the trial court's statement that the sentence was imposed "by necessity."

[32] We conclude that the trial court did not abuse its discretion by imposing the remainder of Cilek's previously suspended sentence.

# Conclusion

[33] The trial court did not abuse its discretion in imposing the sentence it did based upon his admission to failing to meet with his probation officer.

[34] Affirmed.


Robb, J., and Altice, J., concur.