Billy Jack GRUBB, Appellant–
Defendant.

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A05–9912–CR–545.

Court of Appeals of Indiana.

Aug. 21, 2000.

Transfer Denied Oct. 13, 2000.

Michael J. Spencer, Monroe County Public Defender, Bloomington, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Billy Grubb appeals the revocation of his probation. He raises three issues, which we consolidate and restate as:

1) whether the trial court improperly admitted Grubb's videotaped confession at his probation revocation hearing; and

2) whether the trial court improperly admitted the videotaped statements of two children at his probation revocation hearing.

We affirm.

The facts most favorable to the judgment follow. Pursuant to a plea agreement, Grubb was convicted of burglary as a class C felony.[1] On April 17, 1997, the trial court sentenced Grubb to a term of eight years imprisonment, with five years suspended and four years probation. Grubb was given credit for 165 days for time already served. On June 18, 1998, Grubb completed his executed sentence and was placed on probation. As a condition of his probation, Grubb was ordered not to consume alcohol or engage in any criminal activity while on probation.

On August 12, 1998, Sergeant Roger Kelly received information about a possible fight and went to investigate. When he arrived at the scene, Sergeant Kelly spoke with Grubb, who smelled of alcohol, and Grubb admitted that he had been drinking. After discovering that Grubb was under twenty-one years of age, Sergeant Kelly administered a portable breathalyzer test. The test confirmed that Grubb had consumed alcohol.

Sometime in September 1998, the Bloomington Police Department received a report alleging that Grubb had molested two different children, both of whom were three years old. The next day, Officer Daniel Harrell and Sherry Susnick, a caseworker from Child Protective Services, went to Grubb's home and asked him to come to the police department because they needed to ask him some questions. Grubb and his mother agreed and went to the police station that day. Upon Grubb's arrival, Officer Harrell thanked Grubb for coming down to talk to them and informed him that he was not under arrest and that he was free to leave after their conversation. Officer Harrell then left the room and Susnick conducted an interview with Grubb, which was videotaped. During the interview, Grubb admitted molesting both children during June or July of 1998. Following the interview, Grubb left the police department.

On September 16, 1998, the State filed a petition to revoke Grubb's suspended sentence based on the two allegations of child molestation, the allegation of consuming alcohol as a minor, and the allegation of consuming alcohol while on probation. The trial court held a hearing on the petition on March 29, 1999. During the hearing, the State entered into evidence the videotaped interviews of the two child victims over Grubb's hearsay objection. The State also entered into evidence, over Grubb's objection, Grubb's videotaped interview. Following the hearing, the trial

---

1. Ind.Code § 35–43–2–1.

judge found that Grubb had violated the terms of his probation and revoked the five year suspended sentence.

■ Our standard of review of an appeal from the revocation of probation is well settled. We consider only the evidence most favorable to the judgment and we will not reweigh the evidence or judge the credibility of witnesses. *Cox v. State,* 706 N.E.2d 547, 551 (Ind.1999), *reh'g denied.* We will affirm the trial court's decision to revoke probation if there is substantial evidence of probative value to the support the conclusion that the defendant violated any terms of probation. *Id.*

## I.

■ The first issue is whether the trial court improperly admitted Grubb's videotaped confession at his probation revocation hearing. Grubb contends that his statement was taken in violation of *Miranda* and should not have been admitted into evidence or considered for any purpose. The State counters that Grubb was not subjected to a custodial interrogation and therefore the protections of *Miranda* were not invoked. The State further argues that even if Grubb was subjected to a custodial interrogation and his statement was taken in violation of *Miranda,* exclusion of his statement is not mandated in the context of a probation revocation proceeding.

The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In order to protect the privilege against self-incrimination, the United States Supreme Court held in *Miranda v. Arizona* that incriminating statements made while the defendant is in custody and subject to interrogation may not be admitted into evidence unless the defendant waives his Fifth Amendment privilege after being warned of his right to remain silent and the consequences of his failure to do so. *Miranda v. Arizona,* 384 U.S. 436, 467–469, 475–477, 86 S.Ct. 1602, 1624–1625, 1628–1629, 16 L.Ed.2d 694 (1966).

Assuming that Grubb was in custody when he was interrogated, we must consider whether *Miranda* warnings were required to be given to Grubb as a prerequisite for his confession to be admitted into evidence at his probation revocation hearing. This is an issue of first impression in Indiana.

■ The protection against self-incrimination found in the Fifth Amendment, by its very terms, applies only to "criminal case[s]." U.S. CONST. amend. V. As our courts have consistently held, a probation revocation hearing is in the nature of a civil action and is not to be equated with an adversarial criminal proceeding. *Cox,* 706 N.E.2d at 550; *Isaac v. State,* 605 N.E.2d 144, 147 (Ind.1992), *cert. denied* 508 U.S. 922, 113 S.Ct. 2373, 124 L.Ed.2d 278 (1993). As such, a probationer who is faced with a petition to revoke his probation, although he must be given "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body," is not entitled to the full panoply of rights that he enjoyed prior to his conviction. *Isaac,* 605 N.E.2d at 148 (Ind.1992); *see also* Ind.Code § 35–38–2–3. The reason behind this is simple: a probationer, who has already been convicted and had his sentence imposed, differs substantially from those individuals who have not yet been tried and convicted of those crimes that they are suspected of having committed. Unlike the latter, a probationer's liberty is not enjoyed as a matter of right, but is dependent upon the trial court's discretion in granting probation. *See Isaac,* 605 N.E.2d at 146 (noting that there is no right to probation and that the decision whether to grant probation is a matter within the discretion of the trial court). Once granted, a probationer is

entitled to retain his liberty only so long as he substantially abides by the conditions of his probation. *Rivera v. State,* 667 N.E.2d 764, 766 (Ind.Ct.App.1996), *trans. denied.* Such restrictions are designed to ensure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by a probationer being at large. *Id.*

In *Scott,* the United States Supreme Court considered whether the Fourth Amendment exclusionary rule applied to parole revocation proceedings. *Pennsylvania Board of Probation and Parole v. Scott,* 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). The Court noted that because the exclusionary rule is only applicable where the deterrence benefits outweigh the substantial costs associated with the rule, it had repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials. *Id.* at 363, 118 S.Ct. at 2019. In balancing the costs and benefits of applying the exclusionary rule in a parole revocation proceeding, the Court stated that:

> "Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings. The rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches."

*Id.* at 364, 118 S.Ct. at 2020. The Court further stated that "[t]he costs of excluding reliable, probative evidence are particularly high in the context of parole revocation proceedings" because it permits the parolee, who is more likely to commit future criminal offenses than an average citizen, to avoid the consequences of his noncompliance. *Id.* at 365, 118 S.Ct. at 2020. Therefore, because of the substantial costs

and minimal deterrence effect, the Court concluded that the exclusionary rule does not bar the introduction of evidence seized in violation of a parolee's Fourth Amendment rights at a parole revocation hearing. *Id.* at 364, 118 S.Ct. at 2020.

Although *Scott* dealt with the exclusionary rule in the context of a Fourth Amendment violation, we think the principles applied there are equally applicable to the alleged Fifth Amendment violation in the present case. As in *Scott,* the costs associated with excluding Grubb's statement are high while the deterrence effect on police misconduct of excluding the statement is minimal given the fact that the statement cannot be admitted against Grubb at a criminal trial on molestation charges.[2]

We find further support for our conclusion in *Murphy,* a case dealing with whether a statement made by a probationer to his probation officer without *Miranda* warnings is admissible in a subsequent criminal proceeding. *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). In *Murphy,* the United States Supreme Court stated,

> "A defendant does not lose [the Fifth Amendment's] protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes the incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime *other than that for which he has been convicted.*"

*Id.* at 426, 104 S.Ct. at 1141–1142 (emphasis added). Although *Murphy* did not involve the issue presented here, we nevertheless construe such language as clearly contemplating admission of a statement taken in violation of the Fifth Amendment in a probation revocation proceeding.

---

**2.** We emphasize that we are operating on the *assumption* that Grubb was in custody when he was interrogated. In the event that Grubb is prosecuted on molestation charges, the trial court in that case would have to determine the custody issue when ruling on the admissibility of the videotaped confession, and this opinion should not be construed as deciding that issue in any way.

Therefore, we hold that Grubb's statements obtained in violation of *Miranda* were properly admitted at his probation revocation proceeding.

In his reply brief, Grubb asserts,

"In a case such as this where the officer knows the defendant is on probation facing a substantial penalty, the officer can logically determine that getting a statement from the suspect at any cost will be beneficial because it can be used to revoke probation even if it means losing the new allegation of criminal activity."

Reply Brief, p. 4. Any abuses that such a rule could promote are not present in this case. First, Susnick's focus, as a caseworker for Child Protection Services, was not on ensuring compliance with parole conditions or obtaining evidence for Grubb's revocation hearing. The same is true for Officer Harrell. *See Scott,* 524 U.S. 357, 368, 118 S.Ct. at 2022 (noting that because a police officer is not focused upon ensuring compliance with parole conditions or obtaining evidence for introduction at administrative proceedings, but upon obtaining convictions of those who commit crime, the officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials). Moreover, other than making a statement that he was "aggressively interrogated even after making repeated denials," a statement which we cannot verify because Grubb failed to include a transcript of the videotaped interview in the record, Grubb makes no claim that he was questioned for the purpose of discovering a probation violation or that knowledge of his probationary status somehow affected the manner in which Susnick and Officer Harrell investigated the molestation charge. Appellant's Brief, p. 12. Finally, other than noting that he was not read his *Miranda* rights, Grubb does not argue that his statement is untrustworthy because it was coerced or otherwise the product overborne will. Therefore, in the absence of any evidence of rampant abuse of the rule in this case as suggested by Grubb, we hold that Grubb's confession was properly admitted into evidence.

## II.

■ The second issue is whether the trial court improperly admitted the videotaped statements of two children at Grubb's probation revocation hearing. Grubb contends that the introduction of the videotaped statements (1) violated his federal Sixth Amendment right to confront and cross-examine witnesses; (2) violated his state Article 1, § 13 right to meet the witnesses face to face; and (3) constituted erroneous admission of hearsay evidence because the witnesses were not unavailable, the statements did not possess sufficient evidence of reliability, and the circumstances surrounding the statements did not provide particularized guarantees of trustworthiness.

Assuming without deciding that the admission of the videotaped statements of the children was erroneous, such error is not cause for reversal because the children's allegations were corroborated by Grubb's own videotaped statement and Grubb's probation could have been revoked on the mere fact that he consumed alcohol in violation of his probation agreement. *See Smith v. State,* 721 N.E.2d 213, 219 (Ind.1999) (noting that violations of the right to cross-examine are subject to harmless error analysis and that in determining whether such error was harmless, courts should consider factors such as the strength of the prosecution's case, the importance of the witness' testimony, whether the testimony was corroborated, the cross-examination that did occur, and whether the witness' testimony was repetitive); *Brooks v. State,* 692 N.E.2d 951, 953 (Ind.Ct.App.1998), *trans. denied* (noting that proof of any one violation is sufficient to revoke a defendant's probation).

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

ROBB, J. and BAILEY, J., concur.