**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 30 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CLIFFORD M. DAVENPORT**
Davenport Law Offices
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GORDON LEE PEAK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1312-CR-992 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48D03-0108-CF-282

**September 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Gordon Lee Peak appeals the revocation of his probation. Peak raises four issues which we revise and restate as:

I. Whether the trial court erred in admitting evidence obtained as a result of a traffic stop;

II. Whether the court violated his Fifth Amendment rights by compelling him to answer a question at the revocation hearing; and

III. Whether the court abused its discretion in ordering that he serve his previously suspended sentence in the Department of Correction.

We affirm.[1]

FACTS AND PROCEDURAL HISTORY

On December 3, 2001, Peak was sentenced pursuant to a plea agreement to an aggregate term of thirty years on Count I, dealing in cocaine as a class A felony; Count II, possession of marijuana as a class A misdemeanor; Count III, resisting law enforcement as a class A misdemeanor; and Count IV, driving while suspended as a class A misdemeanor. On September 5, 2007, the court held a hearing on a Petition to Modify Sentence filed by Peak, granted the petition, and ordered that Peak be placed on work release. He was also ordered to participate in the "RIGHT program, Job group, and Man-4-Man." Appellant's Appendix at 6. On February 29, 2008, Peak was transferred to in-home detention. On June 18, 2008, a violation of the RIGHT program was filed against Peak stating that he tested positive for Cannabinoids on June 4, 2008, and the court held a hearing on July 7, 2008, in which Peak admitted the violation. The court ordered that he

---

[1] Peak also argues in his brief that "[i]f the court determines that [his] argument concerning due process was waived due to trial counsel failing to object . . . Peak would state he had ineffective assistance of counsel." Appellant's Brief at 16. Because we affirm the admission of evidence gathered from the traffic stop in part I on the merits, we need not address this issue.

2

submit to a urine screen which came back negative, and on July 21, 2008, the court placed him on work release.

On August 13, 2008, Peak filed a pro se Request for Modification of work release, and on August 18, 2008, the court held a hearing on the motion. That same day and following another negative urine screen, the court placed Peak back on in-home detention. On October 13, 2008, the court held a hearing regarding a Petition for Termination of Home Detention Program Privileges and Violation of Suspended Sentence in which the court found that Peak did not violate the terms of his in-home detention but sanctioned him for "an inappropriate association" and placed him back on work release. Id. at 9. On January 1, 2009, Peak filed a pro se Request for Modification off of Work Release, the court held a hearing on March 9, 2009, granted his request, and placed Peak on probation for the balance of his sentence.

On January 22, 2012, Sergeant Shawn Sizemore of the Marion Police Department was conducting surveillance of a residence with suspected drug dealing involvement in Marion, Grant County, Indiana, when he observed a silver Buick leave the residence and travel east along 31st street. Sergeant Sizemore followed the Buick and observed it stop at a traffic light. A "short time" after the vehicle stopped, he observed the vehicle signal for turning right, and it turned right. Transcript at 28. Sergeant Sizemore then contacted Sergeant John Kauffman requesting that he "conduct a traffic stop on the vehicle for failure to use a right turn signal within 200 feet of travel before making the turn." Id. Sergeant Kauffman stopped the Buick about six blocks from where Sergeant Sizemore observed the infraction, and he observed that the Buick contained only the driver who he identified as Peak. Peak rolled down his window, Sergeant Kauffman told him the nature

3

of the stop and asked Peak for his driver's license and registration, and Peak responded that he did not have a driver's license because it was suspended. Peak produced an Indiana identification card, and as he did so "he kept his left hand down at his side between the door and his leg, where [Sergeant Kauffman] could not see it." Id. at 9. Sergeant Kauffman noticed that Peak "was breathing rapidly and didn't make eye contact with him," and further noted that Peak's hand was trembling when he handed over his identification card. Id. at 28. Also, while speaking with Peak, Sergeant Kauffman detected, based upon his training and experience, the "overwhelming odor of fresh green marijuana coming from inside the vehicle," and due to his concern of not being able to see Peak's left hand he asked Peak to exit the vehicle so that he could pat Peak down for safety. Id. at 10. Sergeant Sizemore arrived at the scene and also detected the smell of fresh marijuana.

Sergeant Kauffman escorted Peak to the rear of the vehicle, patted him down, and noticed that Peak "hugged the rear of the vehicle" even after he was asked to step away from it. Id. at 11. Peak finally did step away from the vehicle, and when Sergeant Kauffman patted the front of Peak's clothing, including Peak's groin area, he "felt a large bulge" which "had the consistency of what [he] recognize[d] to be packaged marijuana." Id. Sergeant Kauffman asked "if what [he] was feeling was marijuana and he confirmed that it was." Id. Sergeant Kauffman then placed Peak into custody, transported him to the Marion Police Department, escorted Peak to a room, and instructed Peak to remove the package from inside his pants. The package field tested positive for marijuana and weighed over thirty grams. Sergeant Sizemore advised Peak of his Miranda rights and proceeded to interview Peak, and Peak admitted that he had a large baggie of marijuana

4

on his person that was his and that he "was coming from . . . his brother's residence." Id. at 31. Peak said that he had been at his brother's residence "watching the game, smoking some weed," and that when the game ended he left the residence. Id.

On January 26, 2012, a notice of probation violation was filed alleging that Peak committed the criminal offense of possession of marijuana as a class D felony in Grant County. On February 22, 2012, the court held an initial hearing on the violation in which Peak was notified that an evidentiary hearing would be held on March 12, 2012, and that he would have to appear in court that day. On March 12, 2012, the court held an evidentiary hearing in which Peak failed to appear but was represented by counsel. Sergeant Kauffman testified and was cross-examined regarding the violation, and at the conclusion of the evidence the court issued an arrest warrant for Peak. In September 2013, Peak was extradited from Vero Beach, Florida, and on October 10, 2013, the court held a hearing at which he appeared and set an evidentiary hearing for October 21, 2013.

On October 21, 2013, the court held an evidentiary hearing in which Peak by counsel indicated that Peak was "disputing his complicity with" the possession of marijuana charge but was "willing to admit" that he had been charged with the crime. Id. at 21. The State noted for the court that an evidentiary hearing had been held on March 12, 2012, at which Peak failed to appear and that the court had continued the hearing until "Peak was picked up . . . to allow him to dispute the allegations . . . ." Id. at 22. The court continued the hearing to give Peak the opportunity to prepare a defense and cross-examine the witnesses while he was present.

On November 4, 2013, the court held a hearing in which defense counsel stated at the outset that Peak was willing to admit to the arrest "which in and of itself would be a

probation violation" and that he did not think that it was "appropriate to try [Peak's] case as to the merits." Id. at 26. The hearing proceeded over the objection of Peak, and Sergeant Sizemore testified to evidence consistent with the foregoing. Afterward, defense counsel called Peak to the stand in which the following exchange occurred:

Q    Mr. Peak, I have advised you, as your attorney on this probation violation, that you have a right to remain silent and that any record you make here at this probation violation hearing could be used as evidence against you in the case in Grant County. Have I advised you that?

A    Yes, sir.

Q    And nevertheless, you are insisting on giving testimony on this stop that occurred as been testified to earlier, is that correct?

A    Yes, sir.

Id. at 38.

After Peak provided direct testimony that the police officers conducted a strip search at the scene of the stop, the prosecutor asked Peak on cross-examination whether he possessed marijuana when he was pulled over. Defense counsel objected and instructed Peak not to answer the question, and the court overruled the objection. Peak was again asked if he possessed marijuana at the time he was pulled over, and Peak responded: "Yes, you seen the pictures." Id. at 48. The court revoked Peak's probation and ordered him to serve the balance of his sentence in the Department of Correction.

I.

The first issue is whether the trial court erred in admitting evidence obtained as a result of the traffic stop. The Due Process Clause applies to probation revocation hearings. Reyes v. State, 868 N.E.2d 438, 440 (Ind. 2007) (citing Gagnon v. Scarpelli,

6

411 U.S. 778, 782, 93 S. Ct. 1756 (1973)), reh'g denied. "But there is no right to probation: the trial court has discretion whether to grant it, under what conditions, and whether to revoke it if conditions are violated." Id. "It should not surprise, then, that probationers do not receive the same constitutional rights that defendants receive at trial." Id.

The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution. Id. Such flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods. Id. Within this framework, and to promote the aforementioned goals of a probation revocation hearing, courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. Id.; see also Ind. Evidence Rule 101(d)(2) ("The rules [of evidence] . . . do not apply [to] . . . [p]roceedings relating to . . . probation . . . .").

A probation revocation hearing is in the nature of a civil action, and therefore does not equate with an adversarial criminal proceeding. Grubb v. State, 734 N.E.2d 589, 591 (Ind. Ct. App. 2000), trans. denied.

> As such, a probationer who is faced with a petition to revoke his probation, although he must be given "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body," is not entitled to the full panoply of rights that he enjoyed prior to his conviction.

Id. (quoting Isaac v. State, 605 N.E.2d 144, 147 (Ind. 1992), cert. denied, 508 U.S. 922, 113 S. Ct. 2373 (1993)).

7

In probation revocation hearings, the exclusionary rule is not fully applicable.  Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 365-369 (1998) (holding that exclusionary rule did not bar introduction of evidence seized in violation of parolee's Fourth Amendment rights at parole revocation hearing); Henderson v. State, 544 N.E.2d 507, 512-513 (Ind. 1989) (observing that exclusionary rule is not fully applicable in probation revocation hearings); Grubb, 734 N.E.2d at 592-593 (holding that exclusionary rule did not bar introduction of statements obtained in violation of probationer's Fifth Amendment rights at probation revocation proceeding); Plue v. State, 721 N.E.2d 308, 310-311 (Ind. Ct. App. 1999) (holding that exclusionary rule did not bar evidence obtained as a result of illegal search and seizure at probation revocation proceeding). Illegally seized evidence will be excluded at a revocation hearing only if it was seized as part of a continuing plan of police harassment or in a particularly offensive manner. Henderson, 544 N.E.2d at 513; Plue, 721 N.E.2d at 310.  But see Polk v. State, 739 N.E.2d 666, 669 (Ind. Ct. App. 2000) (applying exclusionary rule to probation revocation proceeding without concluding that evidence was seized as part of a continuing plan of police harassment or in a particularly offensive manner).

Peak argues that although a probationer's due process rights are normally limited at revocation proceedings, "there is an exception to this rule[] if a police office [sic] is not investigating the enforcement of a probationer's conditions of probation nor working with a probationer's probation officer," in which such "probationer has the normal privacy rights of any other person."  Appellant's Brief at 13 (citing Polk, 739 N.E.2d at 666).  Peak maintains that accordingly the exclusionary rule is applicable here and indeed applies to exclude the evidence obtained from the stop because the stop was not

8

supported by reasonable suspicion. The State argues that Peak waived any challenge to the admission of evidence by failing to object, that the exclusionary rule and rules of evidence are not fully applicable in revocation proceedings, and that Sergeant Kauffman had reasonable suspicion to initiate the stop.

The crux of Peak's argument is that the circumstances of his case fall within the exception to the rule that the exclusionary rule is inapplicable in revocation proceedings as described in Polk, that Sergeant Kauffman did not have reasonable suspicion to initiate the traffic stop when he came to a stop before signaling to turn right and proceeded to do so, and that accordingly the evidence resulting from the stop should not have been admitted. Even assuming that Peak did not waive his challenge by failing to object and that his arguments with respect to Polk are persuasive, however, we note that this court recently upheld the admission of evidence resulting from a traffic stop for failure to signal. In Santana v. State, a police officer ran the license plate information of a pickup truck in which "he omitted one digit from the plate number and the result came back 'Not on File.'" 10 N.E.3d 76, 77 (Ind. Ct. App. 2014). The officer soon after observed the truck "turn 100 to 150 feet after the turn signal was activated" and initiated a traffic stop. Id. As a result of the stop, defendant Santana was charged with operating a motor vehicle while privileges were forfeited for life as a class C felony. Id. Santana filed a motion to suppress arguing that the officer did not have a valid basis for stopping his truck. Id. The court denied the motion, and after a bench trial Santana was found guilty as charged. Id. at 77-78.

On appeal, we observed that "[p]olice officers may stop a vehicle when they observe minor traffic violations," that "[a] stop is lawful if there is an objectively

9

justifiable reason for it, and a stop may be justified on less than probable cause," and that "[i]f there is an objectively justifiable reason, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives." Id. at 78. We noted that Ind. Code § 9-21-8-25 requires that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes" and that the court heard evidence that Santana committed an infraction when he failed to do so, and we affirmed Santana's conviction. Id. at 77-78.

Here, Sergeant Sizemore observed Peak come to a stop before signaling and turning right. Whether or not Sergeant Sizemore's decision to radio Sergeant Kauffman to initiate the stop based in part upon other observations is immaterial because Peak's failure to signal in accordance with the law provided an objectively justifiable reason for the stop. We cannot say that the court erred when it admitted evidence resulting from the stop.[2]

## II.

The next issue is whether the court violated Peak's Fifth Amendment rights by compelling him to answer a question at the revocation hearing. Peak notes that at the revocation hearing the prosecutor asked him if he possessed marijuana when he was

---

[2] Peak also asserts in this section of his brief that "[n]owhere in Kauffman's testimony did he indicate that he gave Peak his Miranda rights or had him sign a waiver of his rights," and further that "Officer Sizemore testified that he advised Peak of his Miranda warning and that Peak signed a waiver of rights form at the Marion Police Department. However no copy of the waiver was submitted into evidence at the hearing on November 4, 2013." Appellant's Brief at 14. The State argues that Peak failed to make cogent argument regarding Miranda and that the issue is waived, and we agree. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

10

pulled over, his counsel "instructed him not to answer because it would put him in jeopardy of the criminal case in Grant County," and the court "overruled [his] counsel and then [his] counsel made a continuing objection." Appellant's Brief at 17. He argues that he "was forced to testify as to the marijuana and that violated his Fifth Amendment privilege . . . ." Id. The State argues that "[a] probationer may be forced to provide incriminating information if the State recognizes that it may not use the answers in a later criminal proceeding," that here "[i]t appears [Peak] never asserted his Fifth Amendment privilege against self-incrimination," that Peak "opened the door to questions about the marijuana because he testified about the traffic stop without mentioning the marijuana," that "[t]here is no basis for [Peak's] assumption that the information . . . would be used against him in his pending criminal case," and that in any event the error was harmless. Appellee's Brief at 20-22.

The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction." Morales v. State, 749 N.E.2d 1260, 1267 (Ind. Ct. App. 2001). We review a federal constitutional error *de novo*, and any error "must be 'harmless beyond a reasonable doubt.'"[3] Id. (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967), reh'g denied). Thus, in order to find the error to be harmless in this context,

---

[3] We note that it is apparently not entirely settled whether the federal constitutional harmless error standard applies in probation revocation proceedings. See Black v. State, 794 N.E.2d 561, 566 (Ind. Ct. App. 2003) (applying the federal constitutional harmless error standard in a probation revocation proceeding because the issue was not argued by the parties, but leaving the question "open for argument in subsequent cases"). We need not resolve the question here, because even under the more rigorous federal standard, we conclude that any error in the court's decision to overrule defense counsel's objection was harmless.

we must determine that the error did not contribute to the court's revocation decision, that is, that the error was unimportant in relation to everything else the court considered. See Furnish v. State, 779 N.E.2d 576, 582 (Ind. Ct. App. 2002) (noting that in determining whether an error was harmless beyond a reasonable doubt that this court "must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question"), trans. denied.

Here, we find that Peak's admission at the revocation hearing that he possessed marijuana when he was stopped did not contribute to the court's revocation decision. The court heard the officers' testimony that Peak was stopped for failing to signal for 200 feet in advance of making a right turn, that Officer Kauffman smelled the odor of fresh marijuana when he began speaking with Peak, and that he discovered a package of marijuana which field tested positive while patting Peak down for weapons. A picture of the package of marijuana was admitted as State's Exhibit 2. Any error in compelling Peak to testify regarding whether he possessed marijuana was harmless beyond a reasonable doubt.[4]

### III.

The final issue is whether the court abused its discretion in ordering that Peak serve his previously suspended sentence in the Department of Correction. At the time of Peak's violation, Ind. Code § 35-38-2-3(g) set forth a trial court's sentencing options if the trial court found a probation violation and provided:

---

[4] We observe that, should the issue arise, whether to admit evidence of Peak's testimony from the revocation hearing in the criminal case in Grant County is a matter for the trial court in that case to address.

12

If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:

(1) Continue the person on probation, with or without modifying or enlarging the conditions.

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.[5]

The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable for abuse of discretion. Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007). The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id. (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." Goonen v. State, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

Peak points out that at the revocation hearing his probation officer testified that between March 9, 2009, and the traffic stop on January 22, 2012, "Peak had done

---

[5] This provision is currently codified as Ind. Code § 35-38-2-3(h).

everything that he was supposed to do on probation." Appellant's Brief at 18. He asserts that "an alternative to revoking his probation should be considered," noting that "[b]oth probation and community correction programs are alternatives to a commitment to the Department of Corrections [sic] and both alternatives are within the sole discretion of the trial court." Id. at 18-19. He argues that "[t]hese alternatives '…serve the humane purposes of avoiding incarceration and of permitting the offender to meet the offender's financial obligations.'" Id. at 19 (quoting Cox v. State, 706 N.E.2d 547, 550 (Ind. 1999), reh'g denied). The State argues that the court was well within its discretion in revoking Peak's probation.

The record reveals that less than six years after receiving an aggregate thirty-year sentence, the court modified Peak's sentence and placed him on work release. He was soon after transferred to in-home detention. Less than four months later, Peak tested positive for Cannabinoids and was placed back on work release. The court gave Peak another chance at in-home detention in August 2008, and two months later in October 2008 the court held a hearing on a petition for termination of home detention privileges. Following the hearing, the court placed Peak back on work release due to "an inappropriate association." Appellant's Appendix at 9. Peak was subsequently placed on probation on March 9, 2009. On January 22, 2012, while still on probation for convictions of, among others, dealing in cocaine and possession of marijuana, Peak was found during a traffic stop to be in possession of over thirty grams of marijuana. The court held an initial hearing on Peak's probation violation on February 22, 2012, and informed Peak that the evidentiary hearing would be held on March 12, 2012. At the March 12 evidentiary hearing, Peak failed to appear and a warrant for his arrest was

issued. Eighteen months later in September 2013, Peak was arrested in Vero Beach, Florida, and he was extradited back to Indiana. Given the circumstances as set forth above and in the record, we cannot say that the court abused its discretion in ordering Peak to serve his previously suspended sentence.

CONCLUSION

For the foregoing reasons, we affirm the court's order revoking Peak's probation and ordering that he serve his previously suspended sentence in the Department of Correction.

Affirmed.

BARNES, J., and BRADFORD, J., concur.