## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2020, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Andrew Stebbins
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Martez McGraw,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 21, 2020

Court of Appeals Case No.
19A-CR-1029

Appeal from the Marion Superior
Court

The Honorable Barbara Cook
Crawford, Judge

Trial Court Cause No.
49G01-1408-FB-39384

**Mathias, Judge.**

[1] Martez McGraw ("McGraw") appeals the Marion Superior Court's revocation of his probation. McGraw presents three issues for our review, which we restate as:

I. Whether the trial court abused its discretion by admitting into evidence photos seized from McGraw's phone that were outside the scope of the warrant authorizing the search of the phone;

II. Whether the trial court violated McGraw's due process rights by failing to issue a written statement regarding the evidence the court relied on and its reasons for revoking McGraw's probation; and

III. Whether the trial court abused its discretion in sentencing McGraw.

[2] Although we are greatly concerned about the clearly unreasonable search of McGraw's phone, the photos were not the basis of the trial court's decision to revoke McGraw's probation. And although the trial court did not issue a written order detailing the court's reasoning for revoking McGraw's probation, the court orally explained its reasoning at the revocation hearing. In addition, the transcript of this hearing is sufficient to satisfy the due process requirement of a written statement. Lastly, given the fact that this was the fourth time that McGraw had violated the terms of his placement, we cannot say that the trial court abused its discretion by ordering McGraw to serve seven years of his remaining fourteen-year sentence in the Department of Corrections ("DOC").

## Facts and Procedural History

[3] On September 25, 2014, McGraw pleaded guilty in two separate causes to Class B felony robbery and Class A misdemeanor carrying a handgun without a license. On February 12, 2016, McGraw was sentenced to twenty years, with

six years executed in community corrections, fourteen years suspended and one year of supervised probation.

[4] Just over three months later, on May 27, 2016, the State filed a notice alleging that McGraw had violated the terms of his placement in Marion County Community Corrections ("MCCC"). The trial court held a hearing on this notice on June 23, 2016, at which McGraw admitted to the violations. The trial court then ordered McGraw to remain in community corrections. This was McGraw's first violation.

[5] Shortly thereafter, on July 6, 2016, the State filed another notice alleging that McGraw had violated the terms of his community corrections placement. At a hearing held on September 28, 2016, McGraw again admitted to the violations, and the trial court again ordered McGraw to remain in community corrections. This was McGraw's second violation.

[6] On October 17, 2016, the State again filed notice alleging that McGraw had violated the terms of his placement. At a hearing on October 27, 2016, McGraw yet again admitted to the violation. This was McGraw's third violation. This time, the trial court revoked McGraw's placement in community corrections and ordered him to serve the balance of the six-year executed portion of his sentence in DOC. McGraw was released from DOC custody on November 24, 2017, and began his one year of formal probation. Although McGraw had only one year to serve on formal probation, fourteen years of his sentence remained suspended.

[7]     On January 27, 2018, Indianapolis Metropolitan Police Department ("IMPD") Officer Scott Nichols ("Officer Nichols") accompanied MCCC officers who were conducting home visits of those serving sentences on community corrections. During a visit of one home, Officer Nichols found McGraw, who stated that he did not live at that particular home. Officer Nichols permitted McGraw to leave, but a subsequent search of the home found prohibited items, including a handgun found in the kitchen. The homeowner telephoned McGraw, who claimed that he would come back to the home to "do the right thing," but McGraw never returned. Tr. p. 20. McGraw turned himself in to IMPD officers a few days later.

[8]     Officer Nichols interviewed McGraw, and McGraw described the drugs and money that were inside the home that had been searched on January 27. McGraw said he would "take all of [the homeowner]'s charges," but did not want to discuss the handgun found in the home. Tr. p. 30. Officer Nichols did not arrest McGraw at that time. Instead, he applied for, and ultimately received, a warrant to search McGraw's mobile phone. The issued warrant authorized the police to search McGraw's phone for data stored between January 25 and January 27, 2018.

[9]     Officer Nichols searched McGraw's mobile phone and found three digital photos. Two of the photos show McGraw pointing a handgun at the camera, and the other shows a handgun on the floor. Ex. Vol., State's Exs. 5–7. These photos, however, were taken on January 13, 2018, twelve days outside the scope of the search warrant.

[10] On February 1, 2018, the State charged McGraw, in Cause No. 49G20-1802-F4-4001 ("Cause No. F4-4001"), with Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") and Class A misdemeanor possession of a synthetic drug. On April 18, 2018, the State charged McGraw in Cause No. 49G20-1804-CM-12574 ("Cause No. CM-12574") with Class A misdemeanor possession of marijuana.

[11] On February 5, 2018, the State filed a notice alleging that McGraw had violated two conditions of his probation by being charged with in Cause No. F4-4001 and by failing to report for a drug screen. The State filed an amended notice of probation violation on February 9, adding an additional allegation that McGraw failed to report to the probation department. And the State filed another amended notice on August 6, alleging that McGraw had been charged in Cause No. CM-12574.

[12] On February 27, 2019, McGraw pleaded guilty to Class A misdemeanor possession of a synthetic drug in Cause No. F4-4001, and the State dismissed the Level 4 felony SVF charge. That same day, McGraw pleaded guilty to Class B misdemeanor possession of marijuana in Cause No. CM-12574.

[13] The trial court held a probation revocation hearing on April 4, 2019.[1] McGraw's counsel indicated that he intended to challenge the admissibility of

---

[1] The chronological case summary ("CCS") indicates that probation hearings were also held on April 5, 2018, June 28, 2018, August 23, 2018, October 24, 2018, December 13, 2018, February 14, 2019, and March 14, 2019. Transcripts from these hearings are not included in the record before us, and the CCS entries for

the photos found on McGraw's phone on grounds that they were illegally obtained. The probation officer and the prosecuting attorney then explained to the court the bases of the State's allegations. With regard to the most recent allegation, the prosecuting attorney stated that McGraw had pleaded guilty in Cause No. CM-12574 to Class B misdemeanor possession of marijuana and received a sentence of time served. To support this allegation, the State submitted the sentencing order and probable cause affidavit filed in Cause No. CM-12574, showing that McGraw was sentenced to time served on February 27, 2019. Ex. Vol., State's Ex. 2.

[14] With regard to the allegation that McGraw failed to report to probation as required, the probation officer stated that McGraw "we saw him out in the field during a field visit on January 25, 2018 and he was scheduled to come back to probation on February 7, 2018 and he failed to report." Tr. p. 9. In support of this allegation, the State submitted into evidence a sign-in sheet for February 7, 2018, showing that McGraw never signed in on that day for reporting to the probation department. Ex. Vol., State's Ex. 1.

[15] With regard to the allegation that McGraw had been charged in Cause No. F4-4001, McGraw's attorney admitted to the trial court that McGraw had been convicted in that case of possession of a synthetic drug and sentenced to time served. The trial court stated, "[t]he fact that he was charged with that offense

each of these hearings merely state: "Hearing Result: Commenced and concluded." Appellant's App. pp. 8–10.

[in Cause No. F4-4001] is sufficient for me and for this hearing." Tr. p. 13. When asked if he had been charged with unlawful possession of a firearm by an SVF, McGraw stated, "Yes, ma'am, I was charged with it but not convicted." *Id.* The trial court then concluded, "so we move [on] from there. We have evidence that has been admitted to the Court on each of the allegations. The Court at this time finds that there was a violation of his probation. The Court at this time revokes that probation. So, we are at the point of sentencing[.]" *Id.* at 13–14.

[16] At the sentencing portion of the hearing, the State called Officer Nichols to testify. When the State moved to admit the photos found on McGraw's phone, McGraw objected, claiming that the admission of these photos violated his Fourth Amendment rights because they were outside the scope of the warrant. Officer Nichols testified that he did not notice the date restrictions on the search warrant until after he had searched McGraw's phone. The trial court admitted the photos over McGraw's objection.

[17] At the conclusion of the hearing, the trial court stated:

> Mr. McGraw, the thing that strikes me the most is that you got this huge break of a fourteen (14) year sentence that was reduced to probation basically. . . .
>
> * * *
>
> [Y]ou got this huge break for a really serious offense. It could have [been] a whole lot worse. During the time you have been on probation, you pick up two (2) additional cases and then there is the failure to report to probation. I don't understand that, I don't

understand how you get this huge break and are immediately
grateful and try to do everything you can to stay out of anymore
involvement of the Criminal Justice System and you do things
that are just the opposite. That is what I am trying to understand
where your head was.

Tr. p. 34–35. McGraw responded, "I got caught up. The reason why I am in here, I was going down the wrong path and God sat me down here to get my head back on straight." *Id*. at 35. The trial court continued:

Rather than you facing a murder[,] [y]ou got a reduced sentence,
a lesser crime to plead to and got probation basically. So yea[h],
you were on the wrong road but you would have thought that
that break would send you back on the right track. What
happened?

*Id*. McGraw responded that he had made a "mistake." *Id*.

[18] At the conclusion of the hearing, the trial court ordered McGraw to serve seven years of the remaining fourteen years of his sentence in DOC, four years on community corrections, and three years on probation. McGraw now appeals.

## Probationers' Rights

[19] Probation is a matter of grace, not a right to which a criminal defendant is entitled. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). It is within the discretion of the trial court to determine probation conditions and to revoke probation if the conditions are violated. *Id*. "In appeals from trial court probation violation determinations and sanctions, we review for abuse of discretion." *Id*. A trial court abuses its discretion if its decision is clearly against

the logic and effect of the facts and circumstances, or if the trial court misinterprets the law. *Id.* Probation revocation is a two-step process: first, the trial court must make a factual determination that a violation of a condition of probation actually occurred; next, if a violation is found, then the trial court must determine the appropriate sanctions for the violation. *Id.*

[20]     Probationers are not entitled to the full array of constitutional rights afforded to criminal defendants at trial. *Lightcap v. State*, 863 N.E.2d 907, 910 (Ind. Ct. App. 2007) (citing *Cox v. State*, 706 N.E.2d 547, 550 (Ind. 1999)). Still, the Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *Id.* (citing *Braxton v. State*, 651 N.E.2d 268, 269 (Ind. 1995)). Specifically:

> There are certain due process rights . . . which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral detached hearing body. Indiana Code § 35-38-2-3(e) also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Id.* at 910–11 *(quoting Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992) (footnote omitted)); *accord Cox*, 706 N.E.2d at 549. "Due process [also] requires a written statement by the fact finder regarding the evidence relied upon and the reasons for the revocation of probation." *Washington v. State*, 758 N.E.2d 1014, 1018 (Ind. Ct. App. 2001).

### *I. Admission of Evidence*

[21]     McGraw first argues that the trial court abused its discretion by admitting evidence at the revocation hearing that was obtained in violation of McGraw's Fourth Amendment rights. We review decisions regarding the admission of evidence in probation revocation hearings for an abuse of discretion. *Holmes v. State*, 923 N.E.2d 479, 483 (Ind. Ct. App. 2010). The Indiana Rules of Evidence do not apply in probation matters, and trial courts in probation revocation proceedings are "allow[ed] even more flexibility in the admission of evidence[.]" *Christie v. State*, 939 N.E.2d 691, 693 (Ind. Ct. App. 2011) (citing Indiana Evid. Rule 101(d)(2) (providing that the Rules of Evidence, other than those with respect to privileges, "do not apply in . . . [p]roceedings relating to . . . probation.").

[22]     McGraw challenged the admission of three photos recovered from his mobile phone. Even though the police, laudably, obtained a warrant authorizing the search of McGraw's phone, the clear terms of this warrant limited the search to data stored between January 25 and January 27, 2018. The photos at issue here were stored on January 13, 2018, twelve days outside the scope of the warrant. Officer Nichols gave no explanation for his failure to abide by the terms of the search warrant; he merely indicated that he failed to notice the date restrictions until after he had searched the phone.

[23]     We therefore agree with McGraw that the seizure of the photos was outside the scope of the warrant authorizing the search of his phone. *See State v. Mansor*, 421 P.3d 323, 344 (Or. 2018) (holding that any evidence outside the scope of

the warrant should have been suppressed where the warrant authorized a search of the internet history of defendant's computer for June 12, 2011, but the search of the defendant's computer extended to items well beyond this limited scope); *State v. Figgures*, 839 N.E.2d 772, 777–78 (Ind. Ct. App. 2005) (holding that search and seizure of defendant's mail was outside the scope of the warrant authorizing police to search for and seize cocaine and records pertaining to the sale of cocaine where warrant affidavit focused on defendant's roommate, the State presented no evidence implicating defendant, and defendant's mail was irrelevant to criminal activity being investigated by the police), *trans. denied*.

[24] The State does not argue that the photos were admissible under any exception to the warrant requirement. In fact, the State does not argue that the photos of the handgun found on McGraw's phone were properly seized. Instead, it assumes arguendo that the photos were improperly seized and argues instead that the admission of the evidence during the probation revocation hearing was nevertheless permissible.

[25] The State first argues that admission of the photos was permissible because it claims the exclusionary rule in inapplicable in probation revocation hearings. This is not entirely accurate. With respect to the exclusion of evidence obtained in violation of a probationer's constitutional rights,[2] Indiana courts have long

---

[2] On appeal, McGraw argues that the seizure of the photos from his mobile phone also violated Article 1, Section 11 of the Indiana Constitution. As noted by the State, however, McGraw made no argument regarding the Indiana Constitution before the trial court. Any argument under the Indiana Constitution is therefore waived. *Williams v. State*, 698 N.E.2d 848, 851–52 (Ind. Ct. App. 1998) (citing *Hart v. State*, 578 N.E.2d 336, 338 (Ind. 1991)), *trans. denied*.

held that the exclusionary rule is not *fully* applicable in probation revocation hearings. *See Henderson v. State*, 544 N.E.2d 507, 512–13 (Ind. 1989) (noting that exclusionary rule is not fully applicable in probation revocation hearings); *Grubb v. State*, 734 N.E.2d 589, 592–93 (Ind. Ct. App. 2000) (holding that exclusionary rule did not bar introduction of statements obtained in violation of probationer's Fifth Amendment rights at probation revocation proceeding), *trans. denied*; *Dulin v. State*, 169 Ind. App. 211, 219–20, 346 N.E.2d 746, 752 (1976) (holding that exclusionary rule is not fully applicable in probation revocation hearings).[3] Instead, in a probation revocation hearing, illegally seized evidence will be excluded only if it was seized as part of a "continuing plan of police harassment or in a particularly offensive manner." *Henderson*, 544 N.E.2d at 513.

[26]     While there was no evidence of a continuing plan of police harassment in this case, we are particularly concerned about the execution of the search warrant by Officer Nichols. The warrant authorizing the search of McGraw's phone clearly and explicitly states that warrant was "[g]ranted as to data from 1-25-18 to 1-27-18." Ex. Vol., State's Ex. 4. Instead of tailoring his search of the phone to data from those dates, Officer Nichols simply ignored the scope of the search warrant. This is especially concerning given the nature and quantity of

---

[3] We acknowledge that, in *Polk v. State*, 739 N.E.2d 666, 669 (Ind. Ct. App. 2000), this court applied the exclusionary rule to a probation revocation hearing without addressing the question of whether the exclusionary rule should apply under the facts of that case. But we do not read *Polk* as holding that the exclusionary rule is fully applicable in probation revocation hearings; instead, the issue was simply not addressed.

information contained on a modern mobile phone. *See United States v. Wurie, 728 F.3d. 1, 8 (1st Cir. 2013)* (noting that "[I]nformation [contained on a modern cell phone] is, by and large, of a highly personal nature: photographs, videos, written and audio messages (text, email, and voicemail), contacts, calendar appointments, web search and browsing history, purchases, and financial and medical records.").

[27] If courts permit police to ignore the scope of a carefully worded and restrained warrant authorizing the search of a modern mobile phone, we run the risk of permitting general warrants—the very evil the Fourth Amendment was adopted to prevent. *See Payton v. New York*, 445 U.S. 573, 583 (1980) ("[I]ndiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment."). And if a police officer is allowed to claim that (s)he "did not notice" the clear terms of the warrant, speeding offenses should be subject to the defense that the driver "did not notice" the posted speed limit. We therefore conclude that the careless execution of the carefully limited search warrant issued here, without regard for the limits of the warrant, was done in a "particularly offensive manner," and that the exclusionary rule should apply. The photos seized from McGraw's phone therefore should have been excluded to the extent they were evidence that McGraw had violated the terms of his probation.

[28] The State, however, also argues that, at the time the photos were admitted into evidence, the trial court had already made its decision to revoke McGraw's

probation. As detailed above, at the revocation hearing, the State went through the allegations contained in the notice of probation violation and admitted evidence without objection supporting two of the allegations, including: (1) the probation sign-in sheet, which supported the allegation that McGraw failed to report to probation; and (2) the sentencing order in Cause No. CM-12574, showing that McGraw had been convicted, while on probation, of Class B misdemeanor possession of marijuana.

[29] At this point, McGraw's counsel stated to the court: "As a preliminary matter, if the evidence is admissible[,] I think we can skip straight to sentencing. He has admitted that he's been convicted of an offense under that count." Tr. p. 12. The trial court seemed to agree, stating, "The fact that he was charged with that offense is sufficient for me and for this hearing. So if he admits to that allegation, is that what you are saying?" *Id*. at 13. McGraw's counsel replied, "Yes, he was charged with that [the handgun charge] and convicted of something else. [The handgun] charge was dismissed." *Id*. McGraw stated, "Yes ma'am, I was charged with [the handgun offense] but not convicted." *Id*. The trial court stated, "We have evidence that has been admitted to the Court on each of the allegations. The Court at this time finds that there was a violation of his probation. The Court at this time revokes that probation." *Id*. at 13–14. All of this occurred *before* the photos were admitted into evidence.

[30] Because the trial court made the decision to revoke McGraw's probation before the photos were admitted into evidence, the photos could not have been the basis for the court's decision to revoke probation. Instead, the court's decision

was based on the other evidence of other violations that was admitted at the hearing without objection and that McGraw does not challenge on appeal, i.e., the fact that he admitted to committing another crime while on probation. Accordingly, the admission of the photos was harmless error. *See Decker v. State,* 704 N.E.2d 1101, 1104 (Ind. Ct. App. 1999) (holding that admission of urine screen results at probation revocation hearing was harmless where defendant admitted to smoking marijuana); *see also Figures v. State*, 920 N.E.2d 267, 273 (Ind. Ct. App. 2010) (holding that trial court's finding that defendant had committed a new crime while on probation, although not supported by the evidence, was harmless error because there was sufficient evidence to support the other probation violations found by the trial court).

[31] Moreover, our supreme court has held that the fact that evidence was suppressed and excluded does not preclude the trial court from considering the suppressed and excluded evidence during sentencing. *Walker v. State*, 503 N.E.2d 883, 888 (Ind. 1987); *see also* Evid. R. 101(d)(2) (providing that the Rules of Evidence, other than those with respect to privileges, "do not apply in . . . [p]roceedings relating to . . . sentencing, probation, or parole[.]"); *see also United States v. Sanders*, 743 F.3d 471, 472 (7th Cir. 2014) (noting that the Seventh Circuit Court of Appeals has held that the exclusionary rule does not apply at criminal sentencing and that "[e]very other court of appeals has come to the same conclusion") (citing *United States v. Brimah*, 214 F.3d 854, 858 (7th Cir. 2000)).

[32] Accordingly, although the seizure of the photos from McGraw's phone was improper and should have been excluded had they been offered into evidence during the revocation portion of the hearing, they were not admitted until the sentencing portion of the hearing, at which the exclusionary rule did not prohibit their consideration by the trial court. Furthermore, the admission of the photos was harmless error because there was evidence of other probation violations, including McGraw's conviction of a new crime.

## II.  Written Statement Requirement

[33] McGraw also claims that the trial court violated his due process rights by failing to issue a written statement regarding the evidence the court relied on and its reasons for revoking McGraw's probation. *See Washington*, 758 N.E.2d at 1018 (holding that due process requires such a written statement of the trial court's reasons for revoking probation). The State does not deny that the trial court failed to enter a formal written statement explaining its reasons for revoking McGraw's probation, and our review of the record reveals no such formal statement. However, we have held that the requirement of a written statement may be satisfied by placement of the transcript of the evidentiary hearing in the record, if the transcript contains a clear statement of the trial court's reasons for revoking probation. *Id*.; *Hubbard v. State*, 683 N.E.2d 618, 620–21 (Ind. Ct. App. 1997)). The State argues that the inclusion of the transcript of the revocation hearing in the record on appeal satisfies the requirement of a written statement.

[34] When the trial court ultimately made the decision to revoke McGraw's probation, it referenced the admitted evidence, stating, "[w]e have evidence that

has been admitted to the Court on each of the allegations. The Court at this time finds that there was a violation of his probation. The Court at this time revokes that probation." Tr. pp. 13–14. From this, we think it reasonably clear that the trial court revoked McGraw's probation based on the evidence admitted up to that point, which included the sentencing order in Cause No. CM-12574. Thus, the record contains a written statement—the transcript—setting forth the court's reasons for revoking probation, i.e., McGraw committing an additional criminal offense. This satisfies the due process requirement of a written statement.

[35] McGraw also claims that the transcript is insufficient to show the trial court's reasons for revoking his probation because it reveals that the trial court's decision was based on an improper reason. i.e., merely being charged with (as opposed to committing) an additional criminal offense. There is some validity to this argument. Specifically, the trial court stated, "[t]he fact that [McGraw] was charged with [the handgun] offense is sufficient for me and for this hearing." Tr. p. 13. This is an incorrect statement of the law. As we explained in *Jackson v. State*, 6 N.E.3d 1040 (Ind. Ct. App. 2014):

> [T]he mere filing of a criminal charge against a defendant does not warrant the revocation of probation. Instead, when the State alleges that the defendant violated probation by committing a new criminal offense, the State is required to prove—by a preponderance of the evidence—that the defendant committed the offense.

*Id.* at 1042 (citations omitted). Thus, to the extent the trial court concluded that McGraw being charged with the handgun offense was sufficient to establish a probation violation, it was in error.

[36] However, we cannot overlook the fact that McGraw's counsel *admitted* that McGraw had been convicted of a lesser offense in Cause No. F4-4001. "The requirement that a probationer obey federal, state, and local laws is automatically a condition of probation by operation of law." *Luke v. State*, 51 N.E.3d 401, 421 (Ind. Ct. App. 2016) (citing *Williams v. State*, 695 N.E.2d 1017, 1019 (Ind. Ct. App. 1998)), *trans. denied*. Thus, "[a] criminal conviction is prima facie evidence of a violation and will alone support a revocation of probation." *Williams*, 695 N.E.2d at 1019 (citing *Gleason v. State*, 634 N.E.2d 67, 68-69 (Ind. Ct. App. 1994)).[4] Moreover, as noted supra, the trial court based its decision to revoke probation on all of the evidence admitted up to that point, which included the sentencing order in Cause No. CM-12574, showing that McGraw had indeed been convicted of a Class B misdemeanor in that case. Thus, even though the trial court erred by stating that the criminal charge against McGraw was sufficient to revoke his probation, there was evidence of other violations sufficient to revoke McGraw's probation. The trial court's error was therefore harmless.

---

[4] The State also submitted evidence that McGraw failed to report to probation as required.

### *III.  Sentencing*

[37]     Lastly, McGraw claims that the trial court abused its discretion by ordering him to serve a portion of his previously suspended sentence. Before addressing McGraw's specific arguments on this issue, we note that McGraw was originally sentenced to twenty years as a result of a Class B felony conviction. The sentencing court imposed a sentence of six years executed in community corrections and fourteen years suspended, with only one year of this suspended sentence on formal, reporting probation.[5] After he violated the terms of his placement in community corrections several times, the trial court ordered McGraw to serve the remainder of the six-year executed portion of his sentence in DOC. McGraw was released from DOC custody in November 2017. At this point, he claims, he began to serve the "remaining one year of his sentence on supervised probation." Appellant's Br. at 9. This is not accurate. Instead, when McGraw was released from DOC custody in November 2017, the *entire fourteen-year* suspended portion of his sentence remained, but only one year was to be served on supervised probation. And when the trial court revoked McGraw's probation, it did not order him to serve the entire previously suspended fourteen-year remainder of his sentence. It ordered him to serve seven years

---

[5] *See Jennings v. State*, 982 N.E.2d 1003, 1008 (Ind. 2013) (noting that "'[a] suspended sentence, in effect, is a form of probation" and that "[a] suspended sentence is '[a] sentence postponed so that the convicted criminal is not required to serve time unless he or she commits another crime or violates some other court-imposed condition.'" (quoting Black's Law Dictionary 1322, 1486 (9th Ed. 2009); *Gardner v. State*, 678 N.E.2d 398, 400 (Ind. Ct. App. 1997) (noting that "'[p]robation is merely the condition resulting from a suspended sentence.'") (quoting *State v. Lowdermilk*, 245 Ind. 93, 99, 195 N.E.2d 476, 479 (1964)).

executed in DOC, four years on home detention, and three years on probation. It is with this in mind that we address McGraw's sentencing claims.

[38]  The sentencing of a defendant following a probation violation is governed by statute. Indiana Code section 35-38-2-3(h) provides that upon finding a violation of probation, a trial court may: "(1) [c]ontinue the person on probation, with or without modifying or enlarging the conditions[;] (2) [e]xtend the person's probationary period for not more than one (1) year beyond the original probationary period[; or] (3) [o]rder execution of all or part of the sentence that was suspended at the time of initial sentencing." The fact that the trial court has options under section 35-38-2-3(h) implies it has discretion in deciding which option is appropriate under the circumstances of each case. *Johnson v. State*, 692 N.E.2d 485, 488 (Ind. Ct. App. 1998). Accordingly, we review a trial court's sentencing decision following a probation revocation for an abuse of discretion. *Sanders v. State*, 825 N.E.2d 952, 957 (Ind. Ct. App. 2005), *trans. denied; see also Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) ("Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed.").

[39]  McGraw claims that the trial court abused its discretion because it focused too much on the "deal" McGraw got with his original sentence and less on the facts and circumstances of the violations that led to the revocation. We disagree. To be sure, the trial court did seem to be surprised at the relative lenience of McGraw's original sentence. *See* Tr. p. 34 ("[T]he thing that strikes me the most

is that you got this huge break of a fourteen (14) year sentence that was reduced to probation basically."); *id*. at 35 ("God gave you a huge break with that sentence."). But we do not read the trial court's statements as disagreement with the original sentence as much as dismay at the fact that McGraw did not take advantage of the break he was given by abiding by the terms of his alternative placement. *See id*. ("So yea[h], you were on the wrong road but you would have thought that that break would send you back on the right track. What happened?"). We therefore reject McGraw's claims that the trial court abused its discretion by punishing him because of its disagreement with the relative lenience of McGraw's original sentence.

[40] Nor can we say that the trial court abused its considerable discretion by ordering McGraw to serve seven years of the remaining fourteen years of his sentence in DOC, four years in community corrections, and three years on probation. McGraw was originally given a relatively lenient sentence in that he was required to serve only six years executed in community corrections, with the remaining fourteen years suspended. Instead of taking advantage of the sentencing court's leniency, McGraw repeatedly violated the terms of his community corrections, resulting in his placement therein being revoked and being ordered to serve the remainder of the executed portion of his sentence in DOC. When he was released from DOC custody, McGraw only had to serve one year of the remaining fourteen years of his suspended sentence on reporting probation. Again, instead of taking advantage of this situation, McGraw violated the terms of his probation by being convicted of additional crimes.

Under these facts and circumstances, the trial court's decision to order McGraw to serve seven years in DOC, four years in community corrections, and three years on probation was not an abuse of discretion.

## Conclusion

The police failed to follow the clear and unambiguous terms of the warrant authorizing the search of McGraw's mobile phone. Even though the exclusionary rule is not fully applicable in probation revocation proceedings, we have no hesitation in concluding that, had these photos been offered as State's evidence at the hearing, they should have been excluded. But the photos were only admitted at the sentencing portion of the hearing. And trial courts are permitted to consider otherwise inadmissible evidence at sentencing. Even if the trial court had erred in admitting the photos, any error would be harmless and would not require us to reverse the court's decision to revoke McGraw's probation because there was evidence of other probation violations, including McGraw being convicted of a new criminal offense. Also, the transcript of the trial court's reasons for revoking McGraw's probation is sufficient to satisfy the due-process requirement of a written statement. Lastly, the trial court's decision to order McGraw to serve seven years in DOC, four years in community corrections, and three years on probation was not an abuse of discretion.

Affirmed.

Kirsch, J., and Bailey, J., concur.